**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ISABELLE FRANKLIN,
*Plaintiff-Appellant*,

v.

COMMUNITY REGIONAL MEDICAL
CENTER, FKA Fresno Community
Hospital and Medical Center,
*Defendant-Appellee*,

and

COMMUNITY MEDICAL CENTERS, INC.,
*Defendant*.

No. 19-17570

D.C. No.
1:19-cv-00709-
SKO

OPINION

Appeal from the United States District Court
for the Eastern District of California
Sheila K. Oberto, Magistrate Judge, Presiding

Argued and Submitted October 22, 2020
Honolulu, Hawaii

Filed May 21, 2021

Before:  J. Clifford Wallace, Carlos T. Bea, and
Mark J. Bennett, Circuit Judges.

Opinion by Judge Bennett

**SUMMARY**[*]

**Arbitration**

The panel affirmed the district court's order granting defendant's motion to compel arbitration of wage-and-hour claims brought by a nurse under the Fair Labor Standards Act and California law.

Plaintiff signed a Mediation and Arbitration Policy and Agreement with the staffing agency for which she worked. She also signed a Travel Nurse Assignment Contract with the staffing agency, establishing the terms of her assignment to work at defendant Community Regional Medical Center's hospital. The Assignment Contract also included an arbitration provision.

The panel held that the defendant Hospital, a nonsignatory, could compel arbitration because plaintiff's claims against the Hospital were intimately founded in and intertwined with her contracts with the staffing agency. Thus, under California law, plaintiff was equitably estopped from avoiding the arbitration provisions of her employment contracts.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

David C. Leimbach (argued) and Carolyn H. Cottrell, Schneider Wallace Cottrell Konecky LLP, Emeryville, California, for Plaintiff-Appellant.

Andrew M. Paley (argued), Kiran Aftab Seldon and Geoffrey C. Westbrook, Seyfarth Shaw LLP, Los Angeles, California, for Defendant-Appellee.

**OPINION**

BENNETT, Circuit Judge:

Plaintiff Isabelle Franklin appeals from the district court's order granting defendant Community Regional Medical Center's motion to compel arbitration of Franklin's claims for statutory hour and wage violations. We have jurisdiction pursuant to 9 U.S.C. § 16(a)(3), and we affirm.

I.

Franklin is a nurse who works on assignment. She was employed by a staffing agency, United Staffing Solutions, Inc. (USSI), with whom she signed a Mediation and Arbitration Policy and Agreement (Arbitration Agreement). The Arbitration Agreement requires Franklin and USSI to arbitrate "all disputes that may arise out of or be related to [Franklin's] employment, including but not limited to the

termination of [Franklin's] employment and [Franklin's] compensation."**[1]**

In late 2017, USSI assigned Franklin to work at Community Regional Medical Center's hospital (the Hospital) in Fresno, California. Franklin signed a Travel Nurse Assignment Contract (Assignment Contract) with USSI establishing the terms of her assignment. The Assignment Contract sets Franklin's hourly wages, her overtime rate, the length of her shifts, and USSI's reimbursement policies. It explains that overtime will be paid "as dictated by Hospital policy and/or State Law," but any overtime "must be approved by USSI prior to working." The Assignment Contract also includes an arbitration provision for "any controversy or claim arising under federal, state, and local statutory or common or contract law between United Staffing Solutions, Inc. and [Franklin] involving the construction or application of any of the terms, provisions, or conditions of the [Assignment Contract]."

The Hospital is not a signatory to either the Arbitration Agreement or the Assignment Contract, and there is no contract between Franklin and the Hospital. There is also no contract between the Hospital and USSI. Instead, the Hospital contracts with a managed service provider, Comforce Technical Services, Inc. ("RightSourcing") to source contingent nursing staff like Franklin. RightSourcing, in turn, contracts with USSI to provide the contingent nursing staff for the Hospital.

Under this arrangement, the Hospital retains supervision over the contingent nursing staff's provision of clinical

---

**[1]** There are certain specifically listed "excluded disputes," which are not relevant here.

services.   RightSourcing bills the Hospital and remits payment to USSI for time worked by contingent nursing staff.  USSI sets the wages of the nursing staff and pays them accordingly.  The contract between RightSourcing and USSI requires that nursing staff use the Hospital's timekeeping system but allows USSI to review the records for any discrepancies.   In that contract, USSI agreed to pay its employees for any missed meal periods, but also agreed it would try to collect waivers of second meal periods from its employees.[2]

---

[2] The contract provides:

> In California, Supplier Employee must be provided a thirty (30) minute meal period if he or she works more than five (5) hours per day.  If the total work period per day is no more than six (6) hours, the meal period may be waived by mutual consent of Client and Supplier Employee.  A Supplier Employee who works more than ten (10) hours per day must be provided with a second meal period of at least thirty (30) minutes.  If the total work period per day is no more than twelve (12) hours, the second meal period may be waived by mutual consent but only if the first was not.  A Supplier Employee need not be compensated for a meal break, if relieved of all work during the period and allowed to leave Client's premises.

> Supplier will attempt to collect a California Meal Period Waiver for the second meal period from all Supplier Employees assigned to Client.  If Supplier Employee refuses to waive second meal period, Supplier will notify Client and will counsel Supplier Employee accordingly.  Supplier is required to pay the Supplier Employee for each missed off-duty meal period, and Client will be billed at the regular hourly rate.  If Supplier Employee abuses the requirement, Supplier will counsel Supplier Employee and with

Franklin worked at the Hospital from December 2017 to January 2018. Franklin then brought a class and collective action against the Hospital, alleging violations of the Fair Labor Standards Act (FLSA), the California Labor Code, and the California Business and Professions Code. The FLSA claims allege that the Hospital required Franklin to work during meal breaks and off the clock but failed to pay her for that work. The California Labor Code claims are substantially similar to the FLSA claims and, in addition, allege that the Hospital failed to provide accurate itemized wage statements to Franklin or reimburse her for travel expenses incurred during orientation at the Hospital. The California Business and Professions Code claim alleges unfair business practices based on the California Labor Code violations.

The district court granted the Hospital's motion to compel arbitration and dismissed Franklin's claims without prejudice. The district court held that the Hospital could compel arbitration as a nonsignatory because Franklin's statutory claims against the Hospital were "intimately founded in and intertwined with" her contracts with USSI. Thus, under California law, Franklin was equitably estopped from avoiding the arbitration provisions of her employment contracts. Franklin timely appealed.

## II.

We usually review a district court's decision about the arbitrability of claims de novo. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). When the arbitrability decision concerns equitable estoppel, however,

Client's consent, cancel Supplier Employee's assignment with Client.

our caselaw has been inconsistent on whether we review the district court's decision de novo or for abuse of discretion. *Compare Setty v. Shrinivas Sugandhalaya LLP*, 986 F.3d 1139, 1141 (9th Cir. 2021) (reviewing for abuse of discretion), *and Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014) (same), *with Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1094 (9th Cir. 2020) (reviewing de novo), *and Kramer*, 705 F.3d at 1126 (same). Because we reach the same result here under both de novo and abuse of discretion review, we need not resolve that inconsistency today and analyze this issue de novo.

## III.

"Generally, parties who have not assented to an arbitration agreement cannot be compelled to arbitrate under its terms." *Namisnak*, 971 F.3d at 1094. But "[t]he United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Kramer*, 705 F.3d at 1128 (citing *Arthur Andersen LLP v. Carlisle,* 556 U.S. 624, 632 (2009)). California law applies here, and it allows a nonsignatory to invoke arbitration under the doctrine of equitable estoppel even when a signatory "attempts to avoid arbitration by suing nonsignatory defendants for claims that are based on the same facts and are inherently inseparable from arbitrable claims against signatory defendants." *Metalclad Corp. v. Ventana Env't Organizational P'ship*, 1 Cal. Rptr. 3d 328, 334 (Ct. App. 2003) (quotation marks and citation omitted). We look to "the relationships of persons, wrongs and issues," and in particular, whether the claims are "intimately founded in and intertwined with the underlying contract obligations." *Id.* (citation omitted); *see also*

*Kramer*, 705 F.3d at 1128.  We do this because, as the court in *Metalclad* found:

> The doctrine [of equitable estoppel] prevents a party from playing fast and loose with its commitment to arbitrate, honoring it when advantageous and circumventing it to gain undue advantage. . . . [W]here a party to an arbitration agreement attempts to avoid that agreement by suing a "related party with which it has no arbitration agreement, in the hope that the claim against the other party will be adjudicated first and have preclusive effect in the arbitration[,] [s]uch a maneuver should not be allowed to succeed . . . ."

1 Cal. Rptr. 3d at 335 (quoting *IDS Life Ins. Co. v. SunAmerica, Inc.*, 103 F.3d 524, 530 (7th Cir. 1996)); *see also Boucher v. All. Title Co.*, 25 Cal. Rptr. 3d 440, 447 (Ct. App. 2005) ("The fundamental point [of equitable estoppel] is that a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate by defining the forum in which the dispute will be resolved."); *Turtle Ridge Media Grp., Inc. v. Pac. Bell Directory*, 44 Cal. Rptr. 3d 817, 822 (Ct. App. 2006).  Thus, the question is whether Franklin's claims against the Hospital are "intimately founded in and intertwined with" her employment contract with USSI.

## A.

We begin by determining the relevant California law for analyzing whether a signatory employee's claim against a nonsignatory client of the staffing agency is "intimately founded in and intertwined with" the employment contract. When the California Supreme Court has not spoken on an

issue, we are "obligated to follow the decisions of the state's intermediate appellate courts," unless there is "convincing evidence" that the California Supreme Court would decide differently. *Beeman v. Anthem Prescription Mgmt., LLC*, 689 F.3d 1002, 1008 (9th Cir. 2012) (en banc) (citation omitted). "This is especially true when the supreme court has refused to review the lower court's decision." *State Farm Fire & Cas. Co. v. Abraio*, 874 F.2d 619, 621 (9th Cir. 1989).

Here, in the absence of a California Supreme Court case on point, we must decide whether we are bound to follow the California Court of Appeal's published decision in *Garcia v. Pexco, LLC*, 217 Cal. Rptr. 3d 793 (Ct. App. 2017). In *Garcia*, the California Court of Appeal held that an employee's California Labor Code claims against the staffing agency's nonsignatory client were "intimately founded in and intertwined with" his employment contract with the staffing agency. *Id.* at 796–97. The California Supreme Court denied review. *Id.* at 797. But Franklin contends that *Garcia* is an "outlier" case that was wrongly decided, and thus its holding is not binding on us. We disagree.

Our review of California law shows that *Garcia* is not an "outlier" case. A recent published California Court of Appeal decision on equitable estoppel in the employment context, *Jarboe v. Hanlees Auto Group*, 267 Cal. Rptr. 3d 640 (Ct. App. 2020), discussed *Garcia* and its holding that a "nonsignatory[] could compel arbitration based on equitable estoppel because [plaintiff]'s 'claims against [the nonsignatory client] are rooted in his employment relationship with [the staffing agency].'" *Jarboe*, 267 Cal. Rptr. 3d at 651 (quoting *Garcia*, 217 Cal. Rptr. 3d at 796–97). The court in *Jarboe* distinguished but did not disagree

with *Garcia*—in fact, it analyzed *Garcia* together with *Metalclad* and *Boucher*, two cases that we have long recognized as accurate statements of California law. *See Jarboe*, 267 Cal. Rptr. 3d at 650–52; *see also Kramer*, 705 F.3d at 1129. There are no California decisions inconsistent with *Garcia*, and we see no evidence that the California Supreme Court would reject *Garcia*'s reasoning.

Franklin also argues that *Garcia* was wrongly decided because statutory claims never arise out of or involve the interpretation of employment agreements,[3] relying on *Narayan v. EGL, Inc.*, 616 F.3d 895 (9th Cir. 2010), and *Elijahjuan v. Superior Court*, 147 Cal. Rptr. 3d 857 (Ct. App. 2012). But *Narayan* is not relevant here. In *Narayan*, we held that plaintiffs' claims, which turned on whether they were employees, did not "arise out of the contract" and therefore fell outside the scope of the employment contract's choice-of-law clause under Texas law. 616 F.3d at 898–99. That narrow holding on the scope of a contractual clause (under a different state's law) has no bearing on the different question of whether a plaintiff's claims are "intertwined

---

[3] *Garcia* rejected this argument:

> [Garcia] alleges his claims are based upon statutory violations, do not sound in contract, and cannot be deemed part of the arbitration agreement.

> [His] argument ignores the fact that a claim "arising out of" a contract does not itself need to be contractual. Even though Garcia's claims are styled as Labor Code violations, the arbitration agreement applies.

217 Cal. Rptr. 3d at 795–96 (citation omitted).

with" the employment contract.[4]  Similarly, *Elijahjuan* has nothing to do with equitable estoppel.  In *Elijahjuan*, the court considered whether a statutory claim against a signatory employer fell outside the scope of the arbitration clause.  147 Cal. Rptr. 3d at 859–60.  That scope-of-arbitration analysis of a claim between two signatories provides no guidance for whether claims against a nonsignatory are "intertwined with" the employment contract.[5]

Of course, to compel arbitration of a plaintiff's claims against a nonsignatory (as *Garcia* did), the court must decide both that (1) the plaintiff is equitably estopped from escaping the contract, and (2) the claims fall within the scope of the contract's arbitration clause.  *See Garcia*, 217 Cal. Rptr. 3d at 795–97.  So *Elijahjuan*'s scope-of-arbitration analysis may be relevant to whether a claim against a nonsignatory is ultimately arbitrated.  But in *Elijahjuan*, the court relied on the specific terms of the arbitration clause to determine that

---

[4] In addition, the central issue in *Narayan* was whether plaintiffs were employees—a question answered by California's multi-factor *Borello* test, not the contract's terms.  616 F.3d at 899–904.  In fact, we acknowledged that "the contracts will likely be used as evidence to prove or disprove the statutory claims."  *Id.* at 899.  Besides, California courts have continued to compel arbitration of California Labor Code claims.  *See Khalatian v. Prime Time Shuttle, Inc.*, 188 Cal. Rptr. 3d 113, 119 (Ct. App. 2015).

[5] The scope-of-arbitration and equitable estoppel inquiries are distinct.  *See Garcia*, 217 Cal. Rptr. 3d at 795–96 (discussing whether the plaintiff's claims fell outside the scope of arbitration separately from the equitable estoppel analysis).  The equitable estoppel inquiry asks whether it is fair to saddle the plaintiff with the contract's obligations (under the "intimately founded in and intertwined with" test).  The scope-of-arbitration inquiry asks whether the contract's obligations include arbitration of the plaintiff's claims.

the statutory claims were outside the scope of the agreement. 147 Cal. Rptr. 3d at 864 ("The arbitration provision in this case is . . . narrow and obviously differs from one encompassing 'any and all employment-related disputes.'"). Here, the Arbitration Agreement specifically states that it encompasses "all disputes," including those "based on . . . statute," whether based on certain enumerated federal and state statutes, or on "any other state or federal law or regulation." Likewise, the arbitration agreement in *Garcia* "specifically defined disputes subject to arbitration as including . . . those regarding . . . state and federal employment laws and regulation[s]." 217 Cal. Rptr. 3d at 794. The arbitration clause in *Elijahjuan* had no such language. *See Elijahjuan*, 147 Cal. Rptr. 3d at 860 (requiring arbitration only for disputes "aris[ing] with regard to [the contract's] *application or interpretation*" (emphasis in original)); *cf. Khalatian*, 188 Cal. Rptr. 3d at 119 (compelling arbitration of California Labor Code claims because of "the broad language of the [a]greement"). Thus, *Elijahjuan* does not conflict with *Garcia* or preclude arbitration of Franklin's claims.[6]

Rather, *Garcia* is consistent with Ninth Circuit precedent on equitable estoppel. Although Franklin points out that we have "never previously allowed a non-signatory defendant to invoke equitable estoppel against a signatory plaintiff," *Rajagopalan v. NoteWorld, LLC*, 718 F.3d 844, 847 (9th Cir. 2013) (per curiam), neither have we foreclosed that

---

[6] The district court found that Franklin's claims were "'expressly included' in the scope of [her and USSI's] agreement to arbitrate." She does not otherwise challenge that finding except through her claim that "statutory wage and hour claims exist independent of employment agreements," which we reject.

possibility.**[7]**   In *Kramer*, we recognized that equitable estoppel applies when the plaintiff's claims rely on the written agreement, for instance when the claims are "intimately founded in and intertwined with the underlying contract obligations."  705 F.3d at 1129 (quoting *Goldman v. KPMG, LLP*, 92 Cal. Rptr. 3d 534, 543 (Ct. App. 2009)). We have consistently reiterated this rule in later cases that have considered a nonsignatory defendant's attempt to invoke equitable estoppel against a signatory plaintiff.  *See, e.g.*, *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1230 (9th Cir. 2013); *In re Henson*, 869 F.3d 1052, 1060 (9th Cir. 2017) (per curiam).   Each time, we have declined to require arbitration because the specific facts did not suggest the plaintiffs' claims were "intimately founded in and intertwined with" the arbitration contract.   *Kramer*, for example, involved claims by consumers, who had arbitration agreements with a retailer, against a nonsignatory manufacturer for product defects.  705 F.3d at 1125–26; *cf. Murphy*, 724 F.3d at 1230 (consumer claims against nonsignatory retailer); *In re Henson*, 869 F.3d at 1061 (similar).  None of our previous cases have involved staffing agencies, and the relationship between employees (like nurses), staffing agencies, and clients (like hospitals) bears little resemblance to the relationship between consumers and participants in the supply chain (like manufacturers).**[8]**

---

**[7]** In fact, it is no longer true that we have never applied equitable estoppel to compel arbitration of a plaintiff's claims against a nonsignatory.  *See In re Pac. Fertility Ctr. Litig.*, 814 F. App'x 206, 209 (9th Cir. 2020).

**[8]** Our other equitable estoppel cases take place in similarly inapposite contexts.  *See Rajagopalan*, 718 F.3d at 846–48 (finding claims against payment processing company were not intertwined with contract with debt servicing provider); *Mundi v. Union Sec. Life Ins.*, 555 F.3d 1042, 1044, 1047 (9th Cir. 2009) (finding claims related to life

*Garcia* simply applies a rule that we have (necessarily) long recognized—that equitable estoppel applies to claims "intimately founded in and intertwined with" an underlying contract—to different facts.

Even if we had doubts about how *Garcia* fits within our circuit's caselaw, principles of federalism and comity weigh strongly in favor of following *Garcia*. The same considerations that drove the Supreme Court's decision in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), exist here. Arbitration agreements are contracts, and the Federal Arbitration Act does not "purport[] to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Arthur Andersen*, 556 U.S. at 630. Thus, in applying state law here, we embody *Erie* by "follow[ing] the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently." *Stoner v. N.Y. Life Ins. Co.*, 311 U.S. 464, 467 (1940). We have no convincing evidence that the California Supreme Court (which denied review in *Garcia*) would reject *Garcia*'s reasoning.[9] We have no competing California Court of Appeal decisions that conflict with *Garcia*. If we declined to follow *Garcia* in this situation, we would place our court in the inappropriate position of independently determining the meaning of California

---

insurance policy covering a loan were not intertwined with the loan itself).

[9] Although Franklin argues that some federal district courts have disagreed with *Garcia*'s result, "[t]he opinions of other federal [district] judges on a question of state law do not constitute convincing evidence that the state supreme court would decide an issue differently." *Ryman v. Sears, Roebuck & Co.*, 505 F.3d 993, 995 n.1 (9th Cir. 2007) (quotation marks, citation, and alteration omitted).

contract law.  We would also create a divide between how our circuit and California courts apply equitable estoppel, leading to the "classic pre-*Erie* problems of forum shopping and inconsistent enforcement of state law."  *Beeman*, 689 F.3d at 1005.  This we cannot do.  *Erie*, 304 U.S. at 74–78. Accordingly, we follow the California Court of Appeal's decision in *Garcia*.

B.

The court in *Garcia* found that the plaintiff's statutory claims were "intimately founded in and intertwined with" his employment relationship on these facts: The plaintiff signed an arbitration agreement with a staffing agency and was then assigned to work for the staffing agency's client, who was a nonsignatory to the arbitration agreement.  *Garcia*, 217 Cal. Rptr. 3d at 794.  The plaintiff alleged that the staffing agency and the client had deprived him of meal breaks and rest periods, failed to record his meal breaks properly, and did not pay him for overtime work, among other grievances.  *Id.*; *see also* First Am. Class Action Compl. at 4, *Garcia*, 217 Cal. Rptr. 3d 793 (No. G052872), 2015 WL 10738717. Based on these allegations, the plaintiff sued both the staffing agency and the client as joint employers for violating the California Labor Code and sought recovery of the wages to which he was entitled.  *Garcia*, 217 Cal. Rptr. 3d at 794–95; First Am. Class Action Compl. at 5–9, *Garcia*, 217 Cal. Rptr. 3d 793 (No. G052872).

The facts here are like those in *Garcia*.  Franklin signed two arbitration agreements with USSI and was then assigned to work for USSI's client, the Hospital—a nonsignatory to the arbitration agreements.  Franklin alleges that the Hospital failed to give her proper meal breaks, pay her for off-the-clock work, provide accurate wage statements, or reimburse her for expenses she incurred during her orientation.  Like

the plaintiff in *Garcia*, Franklin also brings statutory claims against the Hospital under the California Labor Code (and similar claims under the FLSA) to recover wages she claims she is entitled to.

It does not matter that Franklin's allegations are leveled only at the Hospital and not USSI. Although the court in *Garcia* cited the plaintiff's decision to allege that the staffing agency and the client were jointly responsible for the statutory violations, 217 Cal. Rptr. 3d at 797, that was not an invitation for litigants and their lawyers to plead around equitable estoppel. In matters of equity, such as the application of equitable estoppel, it is the substance of the plaintiff's claim that counts, not the form of its pleading. *See Copp v. Millen*, 77 P.2d 1093, 1096 (Cal. 1938) ("Equity always looks to the substance, and not to the form . . . ."). For the same reason, Franklin cannot avoid arbitration simply because she has sued only the Hospital and not USSI. *Cf. Goldman*, 92 Cal. Rptr. 3d at 547 (discussing *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524 (5th Cir. 2000), where the Fifth Circuit described an action against only nonsignatories as "a quite obvious, if not blatant, attempt to bypass the agreement's arbitration clause," *id.* at 530). Instead, we look at whether the substance of Franklin's claims against the Hospital is so intertwined with her employment contract with USSI that it would be unfair for Franklin to avoid arbitration.

The thrust of Franklin's claims is that she is owed wages (and overtime) for unrecorded time that she worked. For example, she alleges that she was required to "remain on duty" during her meal and rest breaks, and as a result "routinely performed work during her entire shift." Yet she was not paid for the time she worked during her breaks. Similarly, Franklin alleges that she "performed work while

'off-the-clock' with [the Hospital]'s knowledge and was denied compensation for the time she spent engaged in this work." The court in *Garcia* found these types of claims were intertwined with the employment relationship with the staffing agency, and we do likewise. We analyze Franklin's claims by looking at the relationship between the parties and their connection to the alleged violations. *Metalclad*, 1 Cal. Rptr. 3d at 334. In doing so, we find that Franklin's employment with USSI is central to her claims. The record shows that USSI was responsible for seeking meal period waivers and compensating Franklin for missed meal breaks, as well as making Franklin available for orientation at the Hospital that she alleges was "off-the-clock" work. Even if Franklin is correct that the Hospital violated its statutory obligations by, for example, "alter[ing] the time records to show a meal period that was never taken," or "requir[ing] [Franklin] to perform substantial work off-the-clock and without compensation," USSI was responsible for reviewing the timekeeping records and raising any discrepancies with the Hospital. Although Franklin omits any mention of USSI from her complaint, the substance of her claims is rooted in her employment relationship with USSI, which is governed by the Arbitration Agreement.[10] *See Garcia*, 217 Cal. Rptr. 3d at 796.

Moreover, Franklin's claims depend on whether she was paid the wages or overtime she was due, *see, e.g.*, 29 U.S.C.

---

[10] We have distinguished between an employment relationship and an employment agreement in declining to compel arbitration. *Yang v. Majestic Blue Fisheries, LLC*, 876 F.3d 996, 1002–03 (9th Cir. 2017), *abrogated on other grounds by GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020). But here there is both an employment agreement with an arbitration clause (the Assignment Contract) and a separate Arbitration Agreement covering Franklin's employment with USSI generally.

§ 207(a)(1), but she does not dispute that USSI, not the Hospital, was responsible for paying her.  Not only did the Assignment Contract set her hourly wage rate and overtime rate, but it also set the regular length of her shifts, the time her shifts started and ended, and the number of hours in her workweek.  And under the contract, USSI would pay all overtime "as dictated by Hospital policy and/or State Law," subject to USSI pre-approval.  It is true that Franklin could hypothetically sustain her claims even if there were no Assignment Contract, but in that case a factfinder would still need information about how and whether Franklin was paid by USSI.  Here, that necessary information is established by the terms of her Assignment Contract.  Thus, we agree with the district court that "whether [Franklin] can maintain liability against the Hospital[,] given USSI's role as [her] employer, cannot be answered without reference to the Assignment Contract."

Finally, Franklin's other claims—that the Hospital failed to provide her accurate wage statements or reimburse her travel expenses—cannot stand on their own against the Hospital.  For example, she alleges that the Hospital "do[es] not provide timely, accurate itemized wage statements" and "often promise[s] to reimburse [her] for . . . travel expenses, but often fails to do so."  But the Assignment Contract sets out USSI's payroll duties and the amount of Franklin's travel reimbursement.  Therefore, these claims are not "fully viable without reference to the terms of [the Assignment Contract]." *Goldman*, 92 Cal. Rptr. 3d at 551.

Accordingly, Franklin's claims against the Hospital are "intimately founded in and intertwined with" her employment contract with USSI.  We thus hold that Franklin

is equitably estopped from avoiding arbitration of her claims against the Hospital.[11]

**AFFIRMED.**

---

[11] Because we agree with the district court that the Hospital can compel arbitration under the doctrine of equitable estoppel, we need not and do not reach the issue of whether the Hospital can also compel arbitration under the theory that it is an agent of USSI.