Filed 2/28/24  Windham v. Medestar Locum Tenens CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| SUZONNE WINDHAM, | |
| Plaintiff and Appellant, | E078518 |
| v. | (Super.Ct.No. CVRI2101244) |
| MEDESTAR LOCUM TENENS, LLC, et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Sunshine S. Sykes, Judge.
Affirmed.

The Law Office of Karen J. Sloat, Karen J. Sloat; Hellmich Law Group and
Christopher W. Hellmich, for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre, Derek S. Sachs, and
George J. Theofanis, for Defendant and Respondent Medestar Locum Tenens, LLC.

Suzonne Windham, plaintiff, filed a wage and hour lawsuit against defendants Medestar Locum Tenens, LLC (Medestar), a health care staffing agency, and MACT Health Board, Inc. (MACT), a health care consortium of two federally recognized tribes, as well as several federally acknowledged tribal organizations. After Medestar answered the complaint, MACT filed a motion to quash service of the summons on the ground of tribal immunity from lawsuits. Medestar joined the motion, which was granted by the trial court. Windham appeals.

On appeal, Windham argues (1) the trial court erred by conferring tribal immunity on Medestar derivative from its contractual relationship with MACT without requiring it to prove it was an arm of the tribe, and (2) Medestar waived immunity by filing an answer to the complaint. We affirm.

## BACKGROUND

Medestar is a health care staffing agency, headquartered in Dallas, Texas, matching medical health care providers with health care facilities. MACT is a health care consortium of the Jackson Rancheria of Me-Wuk Indians of California (now known as the Jackson Band of Miwuk Indians) and the Ione Band of Miwok Indians of California, as well as several federally acknowledged tribal organizations. The primary mission of MACT is to improve the health status of the American Indian Native population in its service area, comprising four counties that give MACT its name: Mariposa, Amador, Calaveras, and Tuolumne.

2

MACT is a nonprofit corporation formed in 1979. It is governed by a board of directors comprising three individuals who are: (1) members of federally recognized Native American tribes; and (2) appointed by the leadership of those tribes and an advisory council comprised of five individuals who are members of Native American tribes and appointed by the Native American communities they serve, which represents all Indian people living in the four-county service area. The board and advisory council are active in MACT's administration and management.

MACT received federal funds as a subcontractor of the California Rural Indian Health Board from 1972 until 2012. In March 2013, MACT negotiated its own contract with Indian Health Service (IHS) under the Indian Self-Determination and Education Assistance Act (ISDEAA). On April 1, 2016, MACT renegotiated its ISDEAA agreement with IHS. Under these agreements, MACT receives funding from IHS to provide health care services to eligible members of Native American tribes.

In approximately January 2020, MACT contracted with Medestar to provide MACT with health care providers to work temporarily at one or more of MACT's facilities. At that time, MACT had a staffing need for nursers. Medestar hired Windham as an independent contractor to work as a nurse at a MACT clinic in northern California for a fixed term of 90 days at $95/hour.

In March 2020, Medestar reclassified Windham as an employee. Medestar also extended Windham's fixed-term contract but terminated her employment in April 2020 as the pandemic impacted many health care facilities. A wage and hour dispute arose

3

when her employment was terminated, and Windham filed a proposed class action against Medestar and MACT, alleging numerous causes of action under the Labor Code.[1] In the complaint, Windham alleges that Medestar and MACT were her joint employers.

On September 14, 2021, Medestar answered the FAC, asserting various affirmative defenses, including sovereign immunity. On September 23, 2021, MACT filed a motion to quash service of summons and to dismiss the action on the ground of sovereign immunity (the motion). MACT requested judicial notice of the Federal Register, Volume 85, No. 20 pages 5462-5467 (Jan. 30, 2020), listing the Jackson Band of Miwuk Indians (formerly known as the Jackson Rancheria of Me-Wuk Indians of California) and the Ione Band of Miwok Indians of California as Federally Registered Indian Tribes.

Attached to the motion documents were the articles of incorporation and the corporate bylaws of MACT reflects the corporate purpose: "The specific and primary purposes are to establish, govern, organize, and maintain and expand existing direct health care services, projects and programs for the Indian population of Central California and to provide and improve on the delivery of direct health services to the aforementioned population." Additionally, the bylaws included the purpose of supporting the collection of artifacts of importance to Native Americans served, as well as to provide health care services to nonIndian population as deemed appropriate by the MACT Board of Directors.

---

[1]    A first amended complaint (FAC) was subsequently filed on August 19, 2021, but it is substantially the same as the original complaint, as is Medestar's answer to the FAC.

4

Membership in MACT is limited to Federally Recognized Indian Tribes in the service area, who may apply for membership after participating as an advisory member for no less than three years. The bylaws further explain that the term "Federally Recognized Indian Tribe" means any tribal entity recognized and eligible for funding and services from the Bureau of Indian Affairs by virtue of its status as an Indian tribe.

Additional attachments to the motion included a tribal resolution by the Jackson Rancheria Band of Miwuk Indians designating MACT as a tribal organization, and authorizing MACT to contract with IHS for comprehensive health services to its members and other eligible Indians in the service area. A similar tribal resolution by the Ione Band of Miwok Indians also designated MACT as the local care provider of comprehensive health care and related services. This resolution named an official tribal delegate to serve on the MACT Board of Directors.

Finally, the attachments to the motion included an ISDEAA between MACT and the Department of Health and Human Services Indian Health Service. On September 23, 2021, Medestar joined in the motion.

Windham opposed both the motion by MACT and the joinder by Medestar and objected to the evidentiary matters proffered by MACT. Attached to Windham's opposition papers was a copy of her employment contract with Medestar.

The motion was heard on November 22, 2021, at which time the court took the matters of the motion as well as Medestar's joinder under submission. On December 15, 2021, the court issued its rulings, granting both MACT's motion and Medestar's joinder,

5

granting MACT's request for judicial notice, overruling plaintiff's evidentiary objections to MACT's declarations, and sustaining objections by MACT to plaintiff's declaration. The court found MACT met its burden of proving it was an arm of the tribe entitled to tribal immunity, that it did not waive its immunity because a tribe is only subject to suit where Congress has authorized it, or the tribe has waived immunity. The court found that a tribe's consent cannot be implied and that the asserted waiver at issue was an agreement to arbitrate included in a contract between MACT and Medestar, which was not a clear consent to suit by the tribes. Further, because plaintiff was not a party to that contract, she failed to establish she is a third party beneficiary thereto.

On February 10, 2022, plaintiff Windham appealed.

## DISCUSSION

### 1.  *Whether Medestar and MACT Are "Arms of the Tribes"*

Plaintiff argues that MACT failed to establish it was an "arm of the tribe," entitled to immunity from lawsuit. Here, Windham asserts that MACT was a tribally affiliated entity whose attenuated relationship to the tribes did not entitle it to immunity, under the reasoning of *People v. Miami Nation Enterprises* (2016) 2 Cal.5th 222 (*Miami Nation*). We disagree.

#### A.  *Background of Tribal Immunity*

Indian tribes are "'domestic dependent nations'" that exercise "'inherent sovereign authority.'"  (*Michigan v. Bay Mills Indian Community* (2014) 572 U.S. 782, 788 (*Bay Mills*), quoting *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Tribe of Okla*.

6

(1991) 498 U.S. 505, 509.)  As dependents, the tribes are subject to plenary control by Congress.  (See *United States v. Lara* (2004) 541 U.S. 193, 200.)  However, they remain "separate sovereigns pre-existing the Constitution."  (*Santa Clara Pueblo v. Martinez* (1978) 436 U.S. 49, 56.)  Thus, unless and "until Congress acts, the tribes retain" their historic sovereign authority.  (*United States v. Wheeler* (1978) 435 U.S. 313, 323; see also *Self v. Cher-Ae Heights Indian Community of Trinidad Rancheria* (2021) 60 Cal.App.5th 209, 213.)

As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit, or the tribe has waived its immunity.  (*Kiowa Tribe of Okla. v. Manufacturing Technologies, Inc.* (1998) 523 U.S. 751, 754 (*Kiowa*).)  As a matter of federal law, this immunity from suit "is not subject to diminution by the States."  (*Miami Nation*, *supra*, 2 Cal.5th at pp. 234-235, quoting *Kiowa,* at p. 756.)

Tribal immunity applies in both federal and state court and extends to "suits arising from a tribe's commercial activities, even when they take place off Indian lands." (*Bay Mills*, *supra*, 572 U.S. at p.790.)  Immunity can be abrogated by Congress, but congressional intent to abrogate tribal immunity must be """"unequivocally expressed.""""  (*Santa Clara Pueblo*, *supra*, 436 U.S. at p. 58.)  Immunity may also be waived, but "a tribe's waiver must be 'clear.'"  (*C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.* (2001) 532 U.S. 411, 418.)  As discussed in more detail below, tribal "immunity applies not just broadly but deeply, frequently protecting not just tribal governments, but tribal entities and corporations that are considered subentities of the

7

tribe." (*Miami Nation*, *supra,* 2 Cal.5th at p. 235, citing Florey, *Indian Country's Borders: Territoriality, Immunity, and the Construction of Tribal Sovereignty* (2010) 51 B.C.L.Rev. 595, 627.)

The general rule is that although Indian tribes are not immune from lawsuits filed against them by the United States, the Indian tribes' sovereign status affords them immunity from state jurisdiction. (*Agua Caliente Band of Cahuilla Indians v. Superior Court* (2006) 40 Cal.4th 239, 247-248, citing Cohen, Handbook of Federal Indian Law (2005 ed.) § 7.05[1][a], p. 636.) But there is a limitation: "Although the immunity extends to entities that are arms of the tribes, it apparently does not cover tribally chartered corporations that are completely independent of the tribe. Nor does the immunity extend to members of the tribe just because of their status as members. . . . When tribal officials act outside the bounds of their lawful authority, however, most courts would extend the doctrine of *Ex Parte Young* (1908) 209 U.S. 123 . . . , to allow suits against the officials, at least for declaratory or injunctive relief." (*Agua Caliente* at pp. 247-248, citing Cohen*, supra*, § 7.05[1][a], pp. 636–637, fns. omitted.)

B. *Immunity of MACT As An Arm of the Tribe*

The question presented here is whether MACT established that it is an "arm of the tribe" for which it is immune from suit. We review the immunity issue de novo. (*Self v. Cher-Ae Heights Indian Community of Trinidad Rancheria, supra,* 60 Cal.App.5th at p. 216, citing *Miami Nation*, *supra*, 2 Cal.5th at p. 250.)

8

Tribal sovereign immunity may extend to subdivisions of a tribe, including those engaged in economic activities, provided the relationship between the tribe and the entity is sufficiently close to properly permit the entity to share in the tribe's immunity. (*Breakthrough Mgmt. Group, Inc. v. Chukchansi Gold Casino & Resort* (10th Cir. 2010) 629 F.3d 1173, 1183.) "[A]n entity asserting immunity bears the burden of showing by a preponderance of the evidence that it is an 'arm of the tribe' entitled to tribal immunity." (*Miami Nation*, *supra*, 2 Cal.5th at p. 236.)

In the case of *Miami Nation,* our Supreme Court addressed the situation in which two federally recognized tribes created affiliated business entities, and those entities or their subsidiaries then provided deferred deposit loans through the Internet to California borrowers under terms that allegedly violated the California Deferred Deposit Transaction Law. (Fin. Code, §23000 et seq.) It concluded that an entity asserting immunity bears the burden of showing by a preponderance of the evidence that it is an "arm of the tribe" entitled to tribal immunity. However, *Miami Nation* concerned off-reservation *commercial* activity. (See discussion at 2 Cal.5th pp. 234-235.)

To determine if the tribally created entities were entitled to tribal immunity as "arms of the tribe," the Supreme Court devised "a five-factor test that considers (1) the entity's method of creation, (2) whether the tribe intended the entity to share in its immunity, (3) the entity's purpose, (4) the tribe's control over the entity, and (5) the financial relationship between the tribe and the entity." (*Miami Nation*, *supra*, 2 Cal.5th at p. 236.) In addition to these five factors, a sixth factor has been identified: "whether

9

the purposes of tribal sovereign immunity are served by granting [the entity] immunity." (*Breakthrough Management Group, Inc. v. Chukchansi Gold Casino and Resort*, *supra*, 629 F.3d at p. 1181.) As decisional law recognizes, immunity for subordinate economic entities "directly protects the sovereign Tribe's treasury, which is one of the historic purposes of sovereign immunity in general." (*Allen v. Gold Country Casino* (9th Cir. 2006) 464 F.3d 1044, 1047, citing *Alden v. Maine* (1999) 527 U.S. 706, 750.)

Here, an examination of the six factors supports the trial court's determination:

(1) The method of MACT's creation demonstrates it was incorporated as a not-for-profit corporation, for the express purpose of providing health care services to tribal members. In addition, its formation was accomplished by means of a tribal resolution, and its board consists of tribal members.

(2) The resolution by the Jackson Rancheria Band of Miwuk Indians designated MACT as a tribal organization, authorizing MACT to contract with IHS for comprehensive health services to its members and other eligible Indians in the service area; the tribal resolution by the Ione Band contains similar provisions, and named an official tribal delegate to serve on the MACT Board.

(3) The entity's stated purpose was to provide health care services to Central California tribal members.

(4) The tribes maintained control over the entity by naming delegates to the health care board and membership in MACT is limited to Federally Recognized Indian Tribes in the service area. In this respect, the tribes are not passive participants, as suggested by

plaintiff. The declaration of the executive director of MACT established that MACT is entirely subject to the oversight and control of its member tribes and tribal organizations.

(5) The financial relationship between the entity and the board demonstrates a tribal function given that the authorization to enter into contracts with IHS was for the stated purpose of providing comprehensive health services to tribal members and other eligible Indians in the service area. This was not a commercial agreement, as plaintiff described it during oral argument. The nonprofit nature of the health care organization is itself a feature distinguishing this case from *Miami Nation.* Unlike *Miami Nation,* the articles of incorporation and corporate bylaws do not refer to the payment of any revenues to the tribes. Instead, the funding of MACT was provided pursuant to its contract with IHS, and the contract designates MACT as a "public health service."

(6) Finally, the purposes of tribal sovereign immunity are served by granting MACT immunity given the tribes' duty to provide health care services for the tribal members they serve, and the need to promote Indian self-determination. (See *Pink v. Modoc Indian Health Project* (9th Cir. 1998) 157 F.3d 1185, 1188-1189.)

Plaintiff argues that MACT failed to make its proof with admissible, authenticated evidence, but the trial court overruled her objections at the hearing. At that time, counsel for MACT pointed out that the declarant, to whose declaration the relevant documents were attached, was the executive director of MACT, who had the requisite knowledge to provide a foundation for the evidence. Plaintiff's other arguments that MACT's evidence did not fully explain the manner of its formation in 1979, objections which were also

11

overruled by the trial court, do not demonstrate prejudicial error given the matters recited in the articles of incorporation and the corporate bylaws that reaffirm that the creation of MACT was for the tribal purpose of providing health care services to tribal members, and that MACT is comprised wholly of tribal members.

Plaintiff also argues that MACT failed to disclose the amount of revenue it derives from non-Native American patients versus Native Americans whose care is paid for by the federal government nor provide concrete evidence demonstrating the actual services MACT performs for its various beneficiaries, and its proportionate sources of revenue. The five-factor *Miami Nation* test does not require such a level of proof, particularly where the entity is a not-for-profit public health service under contract with the IHS. The fact MACT's health care services may be available to nonIndian patients "as deemed appropriate by the M.A.C.T. Health Board", does not affect the calculus.[2]

The record demonstrates MACT met its burden of proving by a preponderance of evidence that it was an arm of the tribes, entitled to tribal immunity.

---

[2]    The Emergency Medical Treatment and Active Labor Act (42 U.S.C. §1395dd) requires any hospital with an emergency department to screen or treat any patient who comes to that department. The challenged paragraph in the article of incorporation and bylaws simply reflects this congressionally mandated obligation, and, absent other evidence to the contrary, does not suggest the possibility that MACT engages in profit-making medical services inconsistent with its stated purposes. MACT's revenues are irrelevant to the nature of this wage and hour action where plaintiff has not alleged a corporate fraud, so these assertions appear to be more of a fishing expedition.

C. *Whether Medestar Is Entitled to Tribal Immunity*

Plaintiff also argues the trial court erred in failing to require Medestar to show proof it met the 5-part arm-of-the-tribe test of *Miami Nation*. We disagree again.

Throughout plaintiff's complaint, she alleged she was jointly employed by Medestar and MACT.[3] As such, her claims were subject to Labor Code section 2810.3, subdivision (b), which provides: "A client employer shall share with a labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contractor for both of the following: ¶ (1) The payment of wages. ¶ (2) Failure to secure valid workers' compensation coverage as required by Section 3700."

There is a paucity of decisional law treating the shared liability or affirmative defenses between a labor contractor and a client employer, although the statutory language is unambiguous. California Labor Code § 2810.3(b) imposes shared liability for wage-and-hour violations between a "client employer" and a "labor contractor." A "[c]lient employer" is a "business entity . . . that obtains or is provided workers to perform labor within its usual course of business." (Lab. Code, § 2810.3(a)(1)(A), (b).) A "[l]abor contractor" is the entity "that supplies . . . a client employer with workers to perform labor within the client employer's usual course of business." (*Parsittie v.*

---

[3] At oral argument, plaintiff attempted to walk back this assertion, distancing itself from the joint employer theory, by pointing out that she had dismissed MACT on appeal and was proceeding against Medestar alone. However, there is nothing in the appellate record showing that her complaint was amended to delete the allegation that MACT and Medestar were joint employers.

*Schneider Logistics, Inc*. (9th Cir. 2021) 859 Fed.Appx. 106, 108-109; Lab. Code, § 2810.3(a)(3).)

A joint employer relationship exists when two or more entities, according to common law principles, share significant control of the same employee. (*Felder v. United States Tennis Ass'n* (2d Cir. 2022) 27 F.4th 834, 843, citing *Knitter v. Corvias Mil. Living, LLC* (10th Cir. 2014) 758 F.3d 1214, 1226; see also *Bristol v. Bd. of Cnty. Comm'rs of Cnty. of Clear Creek* (10th Cir. 2002) 312 F.3d 1213, 1218.)

However, determining the existence of a joint employer relationship does not settle the issue, for Labor Code section 2810.3 refers only to shared civil responsibility and liability, and does not speak to shared defenses, or whether a defense applicable to one joint employer applies to both automatically. Some decisions affirm different treatment of joint employers. (See *Grande v. Eisenhower Medical Center* (2020) 44 Cal.App.5th 1147, 1160 [whether an employer is liable for a coemployer's violations depends on the scope of the employer's own duty under the relevant statutes, not principles of agency or joint and several liability].)

But other cases have applied a shared-defense theory to joint employers in certain circumstances. For instance, in *Songer v. Dillon Res., Inc.* (5th Cir. 2010) 618 F.3d 467, the Circuit Court of Appeals held that an exemption to the Fair Labor Standards Act (FLSA), invoked by a motor carrier, could be raised in defense by the staff leasing company that provided truck drivers to the motor carrier. In that case, the trucking companies, with whom the drivers were placed by the staff leasing company, were

14

subject to the Motor Carriers Act, which exempted them from the drivers' claims. Because the staff leasing company was a joint employer, the court held the drivers' claims against the staffing agency were also barred because the work they performed fell within the Motor Carrier Act exemption to the FLSA under 29 Code of Federal Regulations section 782.2 and title 29 of the United States Code section 213(b) and that the staff leasing company was a joint employer with the trucking companies.

Likewise, cases suggest that where the staffing agency's employment contract with an employee asserting wage and hour claims were subject to an arbitration agreement, the hospital acting as the nurse plaintiff's coemployer could demand arbitration, because plaintiff's claim against the hospital was intimately intertwined with her employment contract with the agency. (*Franklin v. Cmty. Reg'l Med. Ctr*. (9th Cir. 2021) 998 F.3d 867, 871-872, relying on *Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539.)

Similarly, in the present case, plaintiff's complaint alleges MACT contracted with Medestar for placement of health care providers at MACT facilities, which subsequently placed her for work at a MACT facility. She signed the contract with Medestar in contemplation of working for MACT. The liability of MACT was exempted by sovereign immunity. The work plaintiff performed was for MACT, a contractor of IHS, at a tribal facility for the benefit of tribes and tribal members, so it was subject to tribal management and control. Her work for MACT and Medestar were intimately intertwined.

15

On this basis, the trial court's finding that immunity extended to Medestar by virtue of the joint employment relationship is proper. Without any pertinent authority to guide our resolution of this thorny issue cited by either party, we lack any basis on which to hold the trial court erred in extending immunity to Medestar.

2. *Whether Medestar's Answer to the First Amended Complaint Resulted in a Waiver of Tribal Immunity*

Plaintiff argues that by filing an answer to the complaint, Medestar made a general appearance, forfeiting any claim of immunity. Medestar argues that plaintiff forfeited this argument by failing to preserve it in the trial court. We conclude the issue was forfeited.

We begin by pointing out that a general appearance waives challenges to in personam jurisdiction. "A general appearance by a party is equivalent to personal service of summons on such party." (Code Civ. Proc., § 410.50, subd. (a).) "A California defendant can preserve objections to personal jurisdiction only by making a special appearance, i.e., an appearance for the sole purpose of objecting to the court's jurisdiction." (*In re Marriage of Obrecht* (2016) 245 Cal.App.4th 1, 8.)

Sovereign immunity is jurisdictional in nature. (*In re Prairie Island Dakota Sioux* (8th Cir. 1994) 21 F.3d 302, 304.) The jurisdictional nature of tribal immunity has never been definitively settled. (*Miami Nation*, *supra*, 2 Cal.5th at p. 243.) Some United States Supreme Court cases indicate that tribal immunity is jurisdictional in a general sense, but they have not elaborated further. (See *Puyallup Tribe, Inc. v. Game Dept.* (1977) 433

16

U.S. 165, 172 [absent abrogation or waiver, "a state court may not exercise jurisdiction over a recognized Indian tribe"]; *Bay Mills*, *supra*, 572 U.S. at p. 820, fn. 2 [although tribe was immune from suit, court had subject matter jurisdiction pursuant to the Indian Gaming Regulatory Act].)

However, sovereign immunity is not of the same character as subject matter jurisdiction. (*Miami Nation, supra,* 2 Cal.5th at p.243.) Unlike subject matter jurisdiction, tribal immunity may also be waived, but unlike in personam or personal jurisdiction, "a tribe's waiver must be 'clear.'" (*Miami Nation*, *supra*, 2 Cal.5th at p. 235, quoting *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, *supra*, 532 U.S. at p. 418.) In the present case, there was no clear waiver of immunity by either the tribe or Medestar, which had raised immunity as one of its affirmative defenses.

In this respect, plaintiff's failure to raise this issue in the trial court has put the parties and the court at a disadvantage. "An appellate court will not consider procedural defects or erroneous rulings where an objection could have been, but was not, raised in the court below." (*Children's Hospital and Medical Center v. Bontá* (2002) 97 Cal.App.4th 740, 776.) This is so because "[i]t is unfair to the trial judge and to the adverse party to take advantage of an alleged error on appeal where it could easily have been corrected at trial." (*Ibid.*)

Plaintiff argues in her reply brief that there are reasons to doubt the wisdom of extending tribal immunity to off-reservation commercial activity because doing so may go 'beyond what is needed to safeguard tribal self-governance,' citing *Kiowa*, *supra*, 523

17

U.S. at p. 758.) The key point here is that the "activity" involved in this case was the provision of health care services, which occurred *on* tribal land, at a tribal facility, for the benefit of the tribes and tribal members.

Because the claim raised here was not presented in the trial court, Medestar was deprived of an opportunity to produce evidence or argument to support the continued viability of its affirmative defense of sovereign immunity following its general appearance. Additionally, due to plaintiff's failure to timely raise the issue, Medestar was deprived of the opportunity to demonstrate how it, as joint employer, was an affiliated entity, entitled to the protection of the sovereign immunity.

### DISPOSITION

The judgment is affirmed. Medestar and MACT are entitled to costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

MILLER
J.
RAPHAEL
J.

18