**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DISABILITY LAW CENTER OF ALASKA,
INC.,
              *Plaintiff-Appellant,*

              v.

ANCHORAGE SCHOOL DISTRICT,
              *Defendant-Appellee.*

No. 08-35057

D.C. No.
CV-07-00131-RRB

OPINION

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted
August 3, 2009—Anchorage, Alaska

Filed September 9, 2009

Before: Jerome Farris, David R. Thompson and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge Farris

**COUNSEL**

Megan K. Allison and Holly Johanknecht, Disability Law Center of Alaska, Anchorage, Alaska, for the plaintiff-appellant.

Bradley D. Owens and Cheryl Mandala, Jermain, Dunnagan & Owens, Anchorage, Alaska, for the defendant-appellee.

J. Daniel Sharp, Folger, Levin, & Kahn, San Francisco, California, for the Amicus.

Francisco Maria Negron Jr., General Counsel, Alexandria, Virginia for the Amicus.

**OPINION**

FARRIS, Circuit Judge:

**I.  Background**

Beginning in 2007, Plaintiff Disability Law Center of Alaska received six separate complaints regarding mistreatment of students in the intensive needs special education class at Lake Otis Elementary School in Anchorage. These complaints described general problems with classroom conditions and specific treatment of both named and unnamed students, as well as identifying the one teacher and one aide responsible.

Law Center is the designated Protection and Advocacy agency for the state of Alaska, as provided under the Protec-

tion and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801 et seq., and the Developmental Disabilities Assistance and Bill of Rights Act, 42 U.S.C. § 15001 et seq. Acting pursuant to its investigatory authority under the legislation, Law Center contacted Defendant Anchorage School District, requesting information regarding the class, its students, its staff, and any relevant school district investigations. The school district provided most of the requested information but refused to provide contact information for the students' guardians or legal representatives.

Law Center brought suit in the district court, seeking to enjoin the school district to turn over the contact information. Law Center also moved for a temporary restraining order and preliminary injunction. The district court treated this as a motion seeking a permanent injunction, on the logic that the release of information cannot be undone. The district court dismissed the case with prejudice, holding that 1) Law Center had failed to establish probable cause to investigate because the responsible teacher and aide no longer worked at Lake Otis Elementary, and 2) the guardian or representative contact information at issue was protected under the Federal Educational Rights and Privacy Act, 20 U.S.C. § 1232g(b)(1), and the Individuals with Disabilities Education Improvement Act, 20 U.S.C. §§ 1412(a)(8), 1417(c). The district court awarded attorney fees to the school district pursuant to Rule 82 of the Alaska Rules of Civil Procedure. Law Center now appeals the dismissal of its action and the award of fees.

## II.    Standard of Review

We review questions of law *de novo*. *Samayoa-Martinez v. Holder*, 558 F.3d 897, 899 (9th Cir. 2009). Mixed questions of law and fact also receive *de novo* review, and we review the underlying factual findings for clear error. *United States v. Bourseau*, 531 F.3d 1159, 1164 (9th Cir. 2008).

### III.   The district court erred by applying the wrong standard in determining whether Law Center had established probable cause.

[1] The Development Disabilities Act grants a Protection and Advocacy agency "the authority to investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported . . . or if there is probable cause to believe that the incidents occurred." 42 U.S.C. § 15043(a)(2)(B). Under this authority, P&As may, after contacting the person's guardian or representative, access a disabled individual's records on the basis of "probable cause to believe that such individual *has been* subject to abuse or neglect." 42 U.S.C. § 15043(a)(2)(I) (emphasis added). In this context, "[p]robable cause means a reasonable ground for belief that an individual with developmental disabilities *has been*, or may be, subject to abuse or neglect." 45 C.F.R. § 1386.19 (emphasis added).

Law Center argued that complaints concerning general problems with classroom conditions and the treatment of students created probable cause to believe that every student in the Lake Otis special education class may have been subject to abuse or neglect, including those not named specifically. On that basis, it could demand guardian contact information from the school district.

The district court disagreed, holding that complaints about classroom conditions do not establish probable cause once the teacher allegedly responsible has left, "absent some showing of systemic neglect." The district court found "no indication of continuing potential for abuse or neglect since the teacher and teaching assistant provoking the complaints are no longer employed at the school."

[2] The students subject to alleged abuse at Lake Otis were elementary-aged children with developmental disabilities who were particularly unable to assert their rights or to protect

themselves. The DD Act does not protect such a vulnerable population only for future harm and systemic neglect. Rather, under the DD Act regulations, a P&A's belief about past harms and a P&A's belief about future harms are distinct, alternative bases for probable cause. 45 C.F.R. § 1386.19. The language of the DD Act, by employing the past tense, makes clear that P&As have authority to investigate past incidents. *See, e.g.*, 42 U.S.C. §§ 15043(a)(2)(B) (" . . . probable cause to believe that the incidents *occurred*") (emphasis added); 15043(a)(2)(I)(iii)(II) (" . . . *has been* subject to abuse or neglect") (emphasis added).

**[3]** The district court erred in holding that probable cause under the DD Act requires some showing that abuse and neglect are ongoing or likely to recur. The fact that the offending teacher and aide had been removed from the Lake Otis classroom did not defeat Law Center's showing of probable cause.

## IV.   Law Center's access to the contact information was not barred by FERPA.

The Federal Educational Rights and Privacy Act protects the confidentiality of educational records kept by government-funded schools. 20 U.S.C. § 1232g. FERPA and IDEA prohibit education agencies from disclosing "educational records" or "personally identifiable information contained therein" without parental consent or court order. 20 U.S.C. § 1232g(b)(1); see also 20 U.S.C. §§ 1412(a)(8), 1417(c).

The district court held that FERPA, and the provisions of IDEA incorporating FERPA's privacy protections, overrode Law Center's authority under the DD Act to demand guardian or representative contact information from the school district.

Where an agency is tasked with administering a statute, we defer to its interpretation of the statute so long as the statute

itself is silent or ambiguous on the issue and the agency's interpretation is not arbitrary or capricious. *Chevron v. Natural Res. Def. Council*, 467 U.S. 837, 842-43 (1984). An agency's interpretation expressed in an amicus brief receives the same deference. *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1082 (9th Cir. 1999).

**[4]** The Department of Health and Human Services and the Department of Education — tasked with administering the DD Act and FERPA, respectively — interpreted the DD Act to have created a limited exception to FERPA. In an amicus brief filed in the Second Circuit case *State of Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229 (2d Cir. 2006), DHHS and DOE interpreted the DD Act as "expressly contemplat[ing] that a school or other facility will provide contact information to a P&A in order to allow the P&A to carry out its responsibility to investigate abuse or neglect." The agencies concluded that "FERPA does not bar a P&A from obtaining access to the name of and contact information for a parent, guardian, or other legal representative."

**[5]** This interpretation merits *Chevron* deference. *See* 467 U.S. at 842-43. The DD Act and FERPA are ambiguous as to their interaction with one another. The agencies' conclusion constitutes a permissible interpretation of the DD Act and FERPA. The agencies stated that "[i]f a school or other facility could refuse to provide the name and contact information, it could interfere substantially with P&A's investigation of abuse or neglect, thereby thwarting Congress' intent that P&As act to protect vulnerable populations from abuse or neglect." Furthermore, the agencies found "no indication that Congress believed that the carefully tailored access rights required under [the DD Act] would be subordinate to the general privacy requirements of FERPA." Rather, "permitting access as provided for under . . . the DD Act is generally consistent with Congress' intent relating to student privacy." Furthermore, "because a P&A is required to maintain the

confidentiality of any student records it receives . . . there is little risk of the public disclosure of information that FERPA is intended to prevent."

**[6]** This conclusion is grounded in a reasonable analysis of Congressional intent and is not arbitrary and capricious. *See Natural Res. Def. Council v. United States Envtl. Prot. Agency*, 526 F.3d 591, 605 (9th Cir. 2008) (agency interpretations receive judicial deference if not arbitrary or capricious). The analysis is especially apt here, where the value in protecting vulnerable individuals outweighs the value in protecting against a small diminution in privacy. We defer to the interpretation. The district court erred in concluding that FERPA bars the Law Center's demand for contact information.

## V. The district court erred in awarding fees to the school district.

**[7]** The district court awarded attorney fees to the school district pursuant to Rule 82 of the Alaska Rules of Civil Procedure, which entitles the prevailing party in a civil case to attorney fees. This was error. In a pure federal question case brought in federal court, federal law governs attorney fees. *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 (9th Cir. 2000). This case presented federal questions concerning the application of federal statutes, and presented no issue of state law.

The school district argues that District of Alaska Local Rule 54.3(a) "adopts Rule 82 as a basis for attorney's fees" without limiting its applicability to cases involving state law. However, Local Rule 54.3(a) states that "[a] motion for attorney's fees under Rule 54(d)(2), Federal Rules of Civil Procedure, must . . . set forth the authority for the award, whether Rule 82, Alaska Rules of Civil Procedure, a federal statute, contractual provision, or other grounds entitling the moving party to the award[.]" The local rule merely acknowledges that Rule 82 can sometimes provide grounds for a fee award

in the District of Alaska; specifically, in diversity cases, *see, e.g.*, *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 902 (9th Cir. 2006), and in federal question cases with supplemental jurisdiction over state-law claims, *see, e.g.*, *United States ex rel. Rebar Placement Co. v. GBC, L.L.C. Contractors*, 2005 WL 846211, at *1 (D. Alaska Jan. 18, 2005). The local rule does not permit Rule 82 to apply in this case.

**REVERSED** and **REMANDED**.