**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| FATEMEH JOHNMOHAMMADI, individually and on behalf of other persons similarly situated, *Plaintiff-Appellant*, v. BLOOMINGDALE'S, INC., *Defendant-Appellee*. | No. 12-55578 D.C. No. 2:11-cv-06434-GW-AJW OPINION |

Appeal from the United States District Court
for the Central District of California
George H. Wu, District Judge, Presiding

Argued and Submitted
December 6, 2013—Pasadena, California

Filed June 23, 2014

Before: John T. Noonan and Paul J. Watford, Circuit
Judges, and William E. Smith, Chief District Judge.\*

Opinion by Judge Watford

---

\* The Honorable William E. Smith, Chief District Judge for the U.S.
District Court for the District of Rhode Island, sitting by designation.

## SUMMARY[**]

### Arbitration / Class Action

The panel affirmed the district court's order granting the motion of Bloomingdale's, Inc. to compel arbitration under the Federal Arbitration Act, and dismissing without prejudice the putative class action brought by a former employee to recover unpaid overtime wages.

The arbitration agreement, contained in Bloomingdale's employment documents, provided that employees who fail to opt out waive their right to pursue employment-related claims on a collective basis in any forum, judicial or arbitral.

The panel held that the district court correctly held that the arbitration agreement was valid, and under the Federal Arbitration Act it must be enforced according to its terms. The panel held that the employee had the right to opt out of the arbitration agreement, and had she done so she would be free to pursue this class action in court. The panel further held that having freely elected to arbitrate employment-related disputes on an individual basis, without interference from Bloomingdale's, the employee could not claim that enforcement of the arbitration agreement violated either the Norris-LaGuardia Act or the National Labor Relations Act.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Dennis F. Moss (argued), Sherman Oaks, California; Ira Spiro, Spiro Moore, LLP, Los Angeles, California; Sahag Majarian II, Law Offices of Sahag Majarian II, Tarzana, California, for Plaintiff-Appellant.

David E. Martin (argued) and Catherine E. Sison, Macy's Inc., St. Louis, Missouri; John S. Curtis, Law Offices of Julia Azrael, North Hollywood, California, for Defendant-Appellee.

Andrew J. Pincus (argued), Evan M. Tager, Archis A. Parasharami, and Richard B. Katskee, Mayer Brown LLP, Washington, D.C.; Robin S. Conrad and Shane B. Kawka, National Chamber Litigation Center, Inc., Washington, D.C., for Amicus Curiae Chamber of Commerce of the United States of America.

Cliff Palefsky and Scott Stillman, McGuinn, Hillsman & Palefsky, San Francisco, California, for Amicus Curiae California Employment Lawyers Association.

Jeffrey A. Berman and James M. Harris, Seyfarth Shaw LLP, Los Angeles, California, for Amicus Curiae California Employment Law Council.

**OPINION**

WATFORD, Circuit Judge:

This is a class action brought by plaintiff Fatemeh Johnmohammadi to recover unpaid overtime wages from defendant Bloomingdale's, Inc., her former employer. All of Johnmohammadi's claims arise under state law and are asserted on behalf of similarly situated current and former California employees. Johnmohammadi initially filed the action in state court, but Bloomingdale's removed the action to federal court under the Class Action Fairness Act of 2005. *See* 28 U.S.C. §§ 1332(d)(2), 1453(b).

Once in federal court, Bloomingdale's moved to compel arbitration under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, and asked the district court to stay the action pending completion of arbitration. The court granted the motion to compel. It determined that shortly after being hired by Bloomingdale's, Johnmohammadi entered into a valid, written arbitration agreement and that all of her claims fall within the scope of that agreement.

In these circumstances § 3 of the FAA, 9 U.S.C. § 3, seems to direct that the action "shall" be stayed pending completion of arbitration, as two other circuits have held. *Lloyd v. Hovensa, LLC*, 369 F.3d 263, 268–69 (3d Cir. 2004); *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994). We have held that, notwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration. *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988). The choice matters for purposes of appellate

jurisdiction:  An order compelling arbitration and staying the action isn't immediately appealable, 9 U.S.C. § 16(b)(1)–(2); *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 87 n.2 (2000), but an order compelling arbitration and dismissing the action is.  § 16(a)(3); *Green Tree*, 531 U.S. at 89.  The district court chose to dismiss Johnmohammadi's action without prejudice, so we have jurisdiction to hear this appeal.  *See Interactive Flight Techs., Inc. v. Swissair Swiss Air Transp. Co.*, 249 F.3d 1177, 1179 (9th Cir. 2001).

The relevant facts aren't in dispute.  When Bloomingdale's hired Johnmohammadi as a sales associate, she received a set of documents describing the company's dispute resolution program.  Those documents informed her that she agreed to resolve all employment-related disputes through arbitration unless she returned an enclosed form within 30 days electing, as the form put it, "NOT to be covered by the benefits of Arbitration."  Johnmohammadi did not return the opt-out form.  She does not contest the district court's findings that she made a fully informed and voluntary decision, and that no threats of termination or retaliation were made to influence her decision.  By not opting out within the 30-day period, she became bound by the terms of the arbitration agreement.  *See Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199–1200 (9th Cir. 2002).

The arbitration agreement is quite detailed, but the provision that matters here is the one that forbids arbitration on a class-wide basis:  "The Arbitrator shall not consolidate claims of different Associates into one (1) proceeding, nor shall the Arbitrator have the power to hear an arbitration as a class action . . . ."  Employees who fail to opt out waive their right to pursue employment-related claims on a collective basis in any forum, judicial or arbitral.  The only question

before us is whether this provision is enforceable; if it is, Johnmohammadi may not proceed with this action.

Johnmohammadi can't argue that the class-action waiver is unenforceable under California law. *See AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1750–51 (2011). She argues instead that federal law renders the waiver unenforceable, relying on provisions in two federal labor statutes. The first statute, the Norris-LaGuardia Act, 29 U.S.C. § 101 *et seq.*, states that, as a matter of public policy, employees "shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of . . . representatives [of their own choosing] or in self-organization or in *other concerted activities* for the purpose of collective bargaining or other mutual aid or protection." § 102 (emphasis added).[1]  The Act declares that

---

[1] Section 102 currently provides:

> In the interpretation of this chapter and in determining the jurisdiction and authority of the courts of the United States, as such jurisdiction and authority are defined and limited in this chapter, the public policy of the United States is declared as follows:

> Whereas under prevailing economic conditions, developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions

any "undertaking or promise in conflict with the public policy declared in section 102 . . . shall not be enforceable in any court of the United States." § 103.

The second statute, the National Labor Relations Act (NLRA), 29 U.S.C. § 151 *et seq.*, says essentially the same thing. Section 7 of the NLRA grants covered employees, *see* § 152(3), certain substantive rights, among them the right "to engage in *other concerted activities* for the purpose of collective bargaining or other mutual aid or protection." § 157 (emphasis added).[2]  Section 8(a)(1), in turn, makes it

---

of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection; therefore, the following definitions of and limitations upon the jurisdiction and authority of the courts of the United States are enacted.

29 U.S.C. § 102.

[2] Section 7 currently provides:

Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a

illegal for an employer "to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section 157."  § 158(a)(1).

Johnmohammadi contends that filing this class action on behalf of her fellow employees is one of the "other concerted activities" protected by the Norris-LaGuardia Act and the NLRA.  There is some judicial support for her position.  *See, e.g.*, *Eastex, Inc. v. NLRB*, 437 U.S. 556, 565–66 (1978); *Brady v. Nat'l Football League*, 644 F.3d 661, 673 (8th Cir. 2011); *Mohave Elec. Coop, Inc. v. NLRB*, 206 F.3d 1183, 1189 (D.C. Cir. 2000); *Salt River Valley Water Users' Ass'n v. NLRB*, 206 F.2d 325, 328 (9th Cir. 1953).  But we need not decide whether Johnmohammadi has correctly interpreted this statutory phrase.  To prevail, she must still show that Bloomingdale's interfered with, restrained, or coerced her in the exercise of her right to file a class action.  In our view, Bloomingdale's did none of these things.

We can quickly dismiss any notion that Bloomingdale's coerced Johnmohammadi into waiving her right to file a class action.  Bloomingdale's did not require her to accept a class-action waiver as a condition of employment, as was true in *In re D.R. Horton, Inc.*, 357 N.L.R.B. No. 184, 2012 WL 36274 (Jan. 3, 2012), *enforcement denied in part*, 737 F.3d 344 (5th Cir. 2013).  Bloomingdale's gave her the option of participating in its dispute resolution program, which would require her to arbitrate any employment-related disputes on an individual basis.  As the district court found,

condition of employment as authorized in section 158(a)(3) of this title.

29 U.S.C. § 157.

Johnmohammadi was fully informed about the consequences of making that election, and she did so free of any express or implied threats of termination or retaliation if she decided to opt out of arbitration. She has not challenged those findings. There is thus no basis for concluding that Bloomingdale's coerced Johnmohammadi into waiving her right to file a class action.

Nor is there any basis for concluding that Bloomingdale's interfered with or restrained Johnmohammadi in the exercise of her right to file a class action. If she wanted to retain that right, nothing stopped her from opting out of the arbitration agreement. Bloomingdale's merely offered her a choice: resolve future employment-related disputes in court, in which case she would be free to pursue her claims on a collective basis; or resolve such disputes through arbitration, in which case she would be limited to pursuing her claims on an individual basis. In the absence of any coercion influencing the decision, we fail to see how asking employees to choose between those two options can be viewed as interfering with or restraining their right to do anything.

Johnmohammadi attempts to analogize the choice Bloomingdale's offered her to other types of employer misconduct that violate § 8(a)(1) of the NLRA. Specifically, she invokes cases in which the employer offered its employees a benefit, such as a raise, in exchange for the employee's agreement to refrain from protected activity. *See, e.g.*, *Nat'l Licorice Co. v. NLRB*, 309 U.S. 350, 360 (1940); *NLRB v. Stone*, 125 F.2d 752, 754, 756 (7th Cir. 1942); *In re Ishikawa Gasket Am., Inc.*, 337 N.L.R.B. 175, 175–76 (2001). She contends Bloomingdale's did the same thing by offering employees the "benefit" of resolving all employment-related

disputes through arbitration in exchange for the employee's agreement not to file or join a class action.

To prevail on this argument, Johnmohammadi would need to show that offering the arbitration agreement constitutes "conduct immediately favorable to employees," which Bloomingdale's undertook with the express purpose of impinging upon its employees' "freedom of choice" in deciding whether to waive or retain their right to participate in class litigation. *NLRB v. Exch. Parts Co.*, 375 U.S. 405, 409 (1964); *see also NLRB v. Anchorage Times Pub'g Co.*, 637 F.2d 1359, 1367 (9th Cir. 1981). We don't doubt that offering the arbitration agreement could be viewed as conduct favorable to employees, since the benefits of having an arbitral forum available to resolve workplace disputes can be substantial. For certain types of disputes the speed, informality, and lower costs of arbitration provide real advantages over litigating in court. *See Concepcion*, 131 S. Ct. at 1749, 1751. But arbitration comes with disadvantages of its own, which, depending on the nature of the dispute, may make it a less attractive forum for employees. At the outset of the employment relationship, before an employee knows what types of workplace-related disputes she may later encounter, the benefits (and costs) of prospectively agreeing to arbitrate all such disputes are decidedly uncertain, even putting aside the class-action waiver. We don't think the offer of those benefits is of such a character that it would tend to interfere with an employee's freedom of choice about whether to forgo future participation in class actions. And Johnmohammadi has offered no evidence that Bloomingdale's offered those benefits with the express purpose of curtailing its employees' freedom of choice. Indeed, it would be difficult for Johnmohammadi to make such a showing here, given that the presumed benefits of

agreeing to arbitrate all employment-related disputes would largely be lost if the agreement permitted class-wide arbitration.  *See id.*

Johnmohammadi also argues that, whether procured by way of inducement or not, an employee may never waive the right to participate in class litigation by negotiating an individual contract with her employer.  She relies principally on *J. I. Case Co. v. NLRB*, 321 U.S. 332 (1944), but that case does not support the broad proposition she urges us to adopt. The Court held in *J. I. Case* that an employer may not negotiate individual contracts with employees and then refuse to engage in collective bargaining with the employees' designated union representatives on the ground that doing so would violate the terms of the individual contracts.  *Id.* at 337.  The Court reasoned that any collective bargaining agreement reached between the union and the employer would necessarily supersede an employee's individual contract, to the extent that the terms of the collective bargaining agreement were more favorable to the employee. *Id.* at 338–39.  But the Court also stressed that nothing prevents an employee from making an individual contract with her employer, "provided it is not inconsistent with a collective agreement or does not amount to or result from or is not part of an unfair labor practice."  *Id.* at 339.  Here, Johnmohammadi was not covered by a collective bargaining agreement, and for the reasons discussed above, we do not believe her decision to enter into the arbitration agreement amounted to or resulted from an unfair labor practice.

In sum, Johnmohammadi had the right to opt out of the arbitration agreement, and had she done so she would be free to pursue this class action in court.  Having freely elected to arbitrate employment-related disputes on an individual basis,

without interference from Bloomingdale's, she cannot claim that enforcement of the agreement violates either the Norris-LaGuardia Act or the NLRA. The district court correctly held that the arbitration agreement is valid. Under the FAA it must be enforced according to its terms. *See Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2309 (2013).

**AFFIRMED**.