**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr>
<td>

WINIFREDO HERRERA;
MACARIA HERRERA,

          *Plaintiffs-Appellees*,

  v.

CATHAY PACIFIC AIRWAYS
LIMITED,

          *Defendant-Appellant*.

</td>
<td>

No. 21-16083

D.C. No.
3:20-cv-03019-
JCS

ORDER AND
AMENDED
OPINION

</td>
</tr>
</table>

Appeal from the United States District Court
for the Northern District of California
Joseph C. Spero, Magistrate Judge, Presiding

Argued and Submitted September 13, 2023
San Francisco, California

Filed March 11, 2024
Amended June 14, 2024

Before: J. Clifford Wallace, Danny J. Boggs,[*] and Danielle
J. Forrest, Circuit Judges.

---

[*] The Honorable Danny J. Boggs, United States Circuit Judge for the U.S.
Court of Appeals for the Sixth Circuit, sitting by designation.

Order;
Opinion by Judge Wallace;
Dissent by Judge Forrest

## SUMMARY[**]

### Arbitration

The panel filed (1) an order amending the majority opinion, filed March 11, 2024; and (2) an amended opinion reflecting the Supreme Court's recent holding that section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, does not "permit[] a court to dismiss the case instead of issuing a stay when the dispute is subject to arbitration and a party requests a stay pending arbitration." *Smith v. Spizzirri*, 144 S. Ct. 1173, 1175 (2024).

The panel reversed the district court's denial of Cathay Pacific Airways Limited's motion to compel arbitration in plaintiffs' putative class action alleging that Cathay Pacific breached their contract by not issuing a refund following flight cancellations for tickets that they purchased through a third-party vendor.

Plaintiffs purchased international flights on Cathay Pacific through a third-party booking website, ASAP Tickets, which had Terms and Conditions that included an arbitration clause. Cathay Pacific cancelled plaintiffs' return flight, and they alleged that Cathay Pacific's failure to

---

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

provide a refund was a breach of contract under the airline's General Conditions of Carriage for Passengers and Baggage ("GCC").

The panel held that, when a nonsignatory seeks to enforce an arbitration provision, an order denying a motion to compel arbitration based on the doctrine of equitable estoppel is reviewed de novo.

As a threshold issue, the panel held that 14 C.F.R. § 253.10 did not bar Cathay Pacific's motion to compel arbitration on equitable estoppel grounds. Section 253.10 clearly and unambiguously regulates a carrier's ability to impose a choice-of-forum clause in contracts of carriage. However, nothing in the plain language of section 253.10 prohibits airline carriers from enforcing arbitration agreements between passengers and third parties if the applicable law permits them to do so.

Applying California contract law, the panel held that because plaintiffs' allegations that Cathay Pacific breached the GCC was intimately intertwined with ASAP's alleged conduct under the Terms and Conditions, it was appropriate to enforce the arbitration clause contained in the Terms and Conditions. Plaintiffs' contention—that it would be unfair to apply equitable estoppel against them because the refund process was not clear under ASAP's Terms and Condition and Cathay Pacific's GCC—was without merit. Accordingly, the panel reversed the district court's denial of Cathay Pacific's motion to compel arbitration and remanded with instructions to stay the action pending arbitration of plaintiffs' breach-of-contract claim.

Dissenting, Judge Forrest would affirm the district court's denial of Cathay Pacific's motion to compel arbitration because plaintiffs' claim against Cathay

Pacific—as they presented it—did not rely or depend on the terms of their ASAP Tickets contract.

## COUNSEL

Benedict Idemundia (argued), Clyde & Co US LLP, Los Angeles, California; Kevin R. Sutherland, Clyde & Co US LLP, San Francisco, California; for Defendant-Appellant.

Matthew Z. Robb (argued) and Nicholas A. Coulson, Liddle Sheets Coulson PC, Detroit, Michigan; Bradley K. King, Ahdoot & Wolfson PC, New York, New York; Tina Wolfson, Ahdoot & Wolfson PC, Burbank, California; for Plaintiffs-Appellees.

## ORDER

The majority opinion in *Herrera v. Cathay Pacific Airways Limited*, 94 F.4th 1083 (9th Cir. 2024), is amended to reflect the Supreme Court's recent holding that section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, does not "permit[] a court to dismiss the case instead of issuing a stay when the dispute is subject to arbitration and a party requests a stay pending arbitration." *Smith v. Spizzirri*, 144 S. Ct. 1173, 1175 (2024).

The amended version is filed concurrently with this order. Plaintiffs-Appellees' petition for rehearing en banc was denied. *See* Dkt. 63. No further petitions for panel rehearing or rehearing en banc will be considered. *See* Gen. Order 5.3(a).

## OPINION

WALLACE, Circuit Judge:

Cathay Pacific Airways Limited (Cathay Pacific) appeals from the district court's denial of its motion to compel arbitration in a putative class action brought by Winifredo and Macaria Herrera (Herreras) alleging that Cathay Pacific breached their contract by not issuing a refund following flight cancellations for tickets that the Herreras purchased through a third-party vendor. We have jurisdiction over this timely appeal pursuant to 9 U.S.C. § 16. We reverse and remand.

### I.

"We usually review a district court's decision about the arbitrability of claims de novo." *Franklin v. Cmty. Reg'l Med. Ctr.*, 998 F.3d 867, 870 (9th Cir. 2021). "When the arbitrability decision concerns equitable estoppel, however, our caselaw has been inconsistent on whether we review the district court's decision de novo or for abuse of discretion." *Id.* (collecting cases).[1]

The line of cases in our circuit applying the abuse-of-discretion standard rely on our decision in *Hoefler v. Babbitt*, where we reasoned that the standard was appropriate "[b]ecause estoppel is an equitable concept that is invoked by the court in its discretion." 139 F.3d 726, 727 (9th Cir.

---

[1] Our sister circuits are split on the issue of which standard of review applies. *See e.g.*, *Reeves v. Enter. Prods. Partners, LP*, 17 F.4th 1008, 1011 (10th Cir. 2021) (collecting cases).

1998).**[2]**    However, such is not the case here where a nonsignatory to the contract containing the arbitration provision seeks to compel enforcement of the arbitration provision against a signatory. Moreover, our review of the district court's order denying the motion to compel arbitration presents mixed questions of law and fact. We review such mixed questions de novo. *Disability L. Ctr. of Alaska, Inc. v. Anchorage Sch. Dist.*, 581 F.3d 936, 938 (9th Cir. 2009). Accordingly, we hold that, when a nonsignatory seeks to enforce an arbitration provision, an order denying a motion to compel arbitration based on the doctrine of equitable estoppel is reviewed de novo.

"The validity and scope of an arbitration clause are reviewed de novo." *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1267 (9th Cir. 2006).

At this stage of the litigation, we assume that all allegations in the complaint are true. *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1006 (9th Cir. 2005). "In reviewing motions to compel arbitration . . . a court must 'consider all relevant, admissible evidence submitted by the parties and contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits.'" *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022), quoting *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 229 (2d Cir. 2016) (emphasis removed).

---

[2] *See*, *e.g.*, *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1179 (9th Cir. 2014), citing *Kingman Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008); *Setty v. Shrinivas Sugandhalaya LLP*, 3 F.4th 1166, 1167–68 (9th Cir. 2021), citing *Nguyen*, 763 F.3d at 1175, 1179.

## II.

Around July 2019, the Herreras purchased international round-trip flights on Cathay Pacific through a third-party booking website, ASAP Tickets (ASAP), which is operated by International Travel Network, LLC (ITN).  The Herreras agreed to ASAP's Terms & Conditions, which provided:

> If fare rules allow refunds and/or exchanges, a $250.00 [ ] fee per ticket will be charged to process any refund and/or exchange request . . . . After the tickets are issued, any changes or refunds are subject to the restrictions on the fares used . . . . The airlines determine the restrictions of the fares, and [ASAP] has no power to override these restrictions.

ASAP's Terms & Conditions also included an arbitration clause, which stated that, except for small-claims court, "[t]he exclusive means of resolving any dispute or claim arising out of or relating to this Agreement (including any alleged breach thereof), the Service, or the Website shall be BINDING ARBITRATION administered by the American Arbitration Association."

The tickets issued by Cathay Pacific for the Herreras' flights incorporated Cathay Pacific's General Conditions of Carriage for Passengers and Baggage (GCC).  Article 10.2 of the GCC in relevant part stated that "[e]xcept as otherwise provided by the Warsaw Convention or the Montreal Convention or applicable law, if [Cathay Pacific] cancel[s] a flight . . . [Cathay Pacific] shall . . . make a refund in

accordance with the provisions of Article 11[.]" In turn, Article 11.1.1 of the GCC stated:

> Except as otherwise provided in this Article, [Cathay Pacific] shall be entitled to make refund either to the person named in the Ticket, or to the person who has paid for the Ticket upon presentation of satisfactory proof of such payment.

While the Herreras were on their trip, Cathay Pacific cancelled their return flight due to "operational reasons." After the cancellation, the Herreras spoke with a Cathay Pacific agent at the airport who recommended that the Herreras purchase a return flight on another airline and "expressly assured [them] that they would receive a refund for the unused portion of their Cathay Pacific tickets." The Herreras followed the agent's recommendation and purchased a return flight on another airline.

In the email notifying the Herreras of their flight cancellation, Cathay Pacific instructed them to "contact [their] travel agent" to request a refund. The Herreras reached out to ASAP and made "multiple requests" to receive a refund. After the Herreras returned home, an ASAP agent communicated to them that Cathay Pacific would only offer them travel vouchers that would expire a handful of months later, an offer which the Herreras rejected due to travel restrictions related to the ongoing COVID-19 pandemic. Cathay Pacific attests that the airline never received a refund request either from the Herreras or from ASAP on behalf of the Herreras.

The Herreras filed a First Amended Class Action Complaint (FAC), asserting a breach-of-contract claim

against Cathay Pacific for failing to provide a refund under the GCC.  In response, Cathay Pacific moved to dismiss or, in the alternative, to compel arbitration based on the doctrine of equitable estoppel, relying on the arbitration clause in ASAP's Terms & Conditions.  The district court denied Cathay Pacific's motion to compel, reasoning that the Herreras "base[d] their breach of contract claim on Cathay Pacific's obligations under its own GCC, not on any obligation contained in ASAP's Terms and Conditions[,]" and the Herreras "d[id] not assert that ASAP engaged in any misconduct or breached its contractual obligations to them under the Terms and Conditions."  Cathay Pacific appealed from the order under 9 U.S.C. § 16(a)(1)(c), which provides for interlocutory appellate review of orders denying motions to compel arbitration.  On appeal, Cathay Pacific seeks reversal of the district court's denial of its motion to compel arbitration, and either dismissal or a stay of the action pending arbitration of the Herreras' breach-of-contract claim.

III.

As a threshold issue, the Herreras contend that 14 C.F.R. § 253.10 bars Cathay Pacific's motion to compel arbitration.[3]  "[T]he plain meaning of a regulation governs

---

[3] Cathay Pacific contends that the Herreras forfeited this issue by raising it for the first time on appeal.  "Absent exceptional circumstances, we generally will not consider arguments raised for the first time on appeal, although we have discretion to do so." *In re Am. W. Airlines, Inc.*, 217 F.3d 1161, 1165 (9th Cir. 2000).  "One exceptional circumstance is when the issue is one of law and either does not depend on the factual record, or the record has been fully developed." *Id.* (internal quotation marks omitted).  Given that the Herreras' argument with respect to section 253.10 is a matter of statutory construction and the record is developed as to this issue, we exercise our discretion to address it.

and deference to an agency's interpretation of its regulation is warranted only when the regulation's language is ambiguous." *Wards Cove Packing Corp. v. Nat'l Marine Fisheries Serv.*, 307 F.3d 1214, 1219 (9th Cir. 2002), citing *Christensen v. Harris County*, 529 U.S. 576, 588 (2000). "Therefore, the starting point of our analysis must begin with the language of the regulation." *Id.* Section 253.10 reads:

> No carrier may impose any contract of carriage provision containing a choice-of-forum clause that attempts to preclude a passenger, or a person who purchases a ticket for air transportation on behalf of a passenger, from bringing a claim against a carrier in any court of competent jurisdiction, including a court within the jurisdiction of that passenger's residence in the United States (provided that the carrier does business within that jurisdiction).

14 C.F.R. § 253.10.

Section 253.10 clearly and unambiguously regulates a carrier's ability to impose a choice-of-forum clause *in contracts of carriage*. However, nothing in the plain language of section 253.10 prohibits airline carriers from enforcing arbitration agreements between passengers and third parties if the applicable law permits them to do so. Accordingly, section 253.10 does not bar Cathay Pacific's motion to compel arbitration on equitable-estoppel grounds.

IV.

"[T]he Federal Arbitration Act (FAA) governs the enforceability of arbitration agreements in contracts

involving interstate commerce," including the purchase of airfare. *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013), citing 9 U.S.C. § 1 *et seq*. "The FAA states that '[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.*, quoting 9 U.S.C. § 2. "The United States Supreme Court has held that a litigant who is not a party to an arbitration agreement may invoke arbitration under the FAA if the relevant state contract law allows the litigant to enforce the agreement." *Id.* at 1128, citing *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009).

We turn to California contact law—which neither party disputes applies—to determine whether Cathay Pacific, as a nonsignatory to ASAP's Terms & Conditions, may compel arbitration under the agreement based on equitable estoppel.[4] Under California law, a nonsignatory to a contract may enforce an arbitration provision under the doctrine of equitable estoppel when "the claims [against the nonsignatory] are 'intimately founded in and intertwined with' the underlying contract."[5] *Id.* at 1128–29, quoting *Goldman*, 173 Cal. App. 4th at 221.

---

[4] Neither party disputes that ASAP's Terms & Conditions is an enforceable clickwrap agreement between the Herreras and ASAP that the Herreras agreed to when purchasing their flight tickets through the third-party booking website.

[5] A nonsignatory may also enforce an arbitration provision under the doctrine of equitable estoppel "when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and 'the allegations of interdependent misconduct

We focus our inquiry on whether the Herreras' breach-of-contract claim against Cathay Pacific is "intimately founded in and intertwined with" ASAP's Terms & Conditions containing the arbitration clause. In determining whether equitable estoppel applies to the Herreras' claim, we "look[] at the relationship between the parties and their connection to the alleged violations." *Franklin*, 998 F.3d at 875, citing *Metalclad Corp. v. Ventana Env't Organizational P'ship*, 109 Cal. App. 4th 1705, 1713 (2003). Cathay Pacific's records show that the airline issued the Herreras' tickets to ITN, and received ASAP's customer-support contact information along with the Herreras' passenger details. Our dissenting colleague faults Cathay Pacific for not presenting its agreement with ASAP or other evidence to support that ASAP purchased the Herreras' tickets in the first instance. Dissent at 25. However, we find sufficient the Herreras' electronic-ticket history: Cathay Pacific issued the tickets to the International Air Transport Association numeric code—a unique code identifying a travel agency—associated with ITN, the entity that operates ASAP.**[6]** In "review[ing] the record as a whole" we "may accept uncontested facts found therein." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1083 (9th Cir. 2004),

---

[are] founded in or intimately connected with the obligations of the underlying agreement.'" *Kramer*, 705 F.3d at 1126, quoting *Goldman v. KPMG, LLP*, 173 Cal. App. 4th 209, 219 (2009). We do not reach this second scenario here.

[6] In briefing and at oral argument, Cathay Pacific maintained that ASAP purchased the Herreras' tickets from Cathay Pacific. In the FAC and at oral argument, the Herreras alleged that they bought the Cathay Pacific tickets from ASAP. Thus, the parties' positions are not inconsistent: ASAP purchased the tickets from Cathay Pacific and sold the tickets to the Herreras.

*overruled on other grounds by L.A. Cty. v. Humphries*, 562 U.S. 29 (2010).

Article 11.1.1 of the GCC entitles Cathay Pacific to pay any refund owed for canceling the flight to either "the person named in the Ticket, or to the person who has paid for the Ticket."[7]  In other words, although Cathay Pacific was not *required* to provide the refund for the Herreras' unused flight to ASAP as the travel agent, Article 11.1.1 *entitled* Cathay Pacific to do so.[8]  Cathay Pacific's instruction to the Herreras to make their refund request to ASAP effectively made ASAP a "middleman" for refund-processing purposes.

As alleged in the FAC, when the Herreras requested a refund from ASAP, ASAP informed them that Cathay Pacific would only provide an expiring travel voucher rather than a monetary refund.  Such communication by ASAP would be consistent with its Terms & Conditions, which provided that ASAP has no power to override any fare restrictions set by the airline, if the offer for the expiring

---

[7] The GCC does not define "person."  However, an ASAP customer must work with an ASAP travel agent to select the desired flight itinerary, and, as we already found, Cathay Pacific issued the Herreras' tickets to a "travel agent."  Further, Cathay Pacific instructed the Herreras to contact their travel agent to request a refund.  For purposes of the motion to compel, we conclude that "person" as referenced in Article 11.1.1 of the GCC includes the travel agent to which Cathay Pacific issued the Herreras' tickets.

[8] Our dissenting colleague understands Cathay Pacific's position to be that it was contractually obligated to pay any refund owed to the Herreras to ASAP.  Dissent at 24.  We disagree.  Cathay Pacific asserted that, as a practical matter, it could not refund the Herreras directly because it did not possess the Herreras' credit card information.  That position is consistent with our finding that ASAP purchased the Herreras' tickets from Cathay Pacific.  We need not make any findings as to whether restrictions exist on the refunds.

travel voucher originated with Cathay Pacific. Cathay Pacific's position is that ASAP never communicated a refund request on behalf of the Herreras, and that the offer of expiring travel vouchers did not come from Cathay Pacific. In short, Cathay Pacific has placed ASAP's conduct at issue by asserting that ASAP violated its own Terms & Conditions by creating refund restrictions—restrictions that form a basis for the Herreras' claim.[9] Because the Herreras' allegations that Cathay Pacific breached the GCC is "intimately founded in and intertwined with" ASAP's alleged conduct under the Terms & Conditions, it is appropriate to enforce the arbitration clause contained in the Terms & Conditions.

*Franklin* is instructive on this issue. *Franklin* involved our review of a district court's order granting a defendant's motion to compel arbitration based on equitable estoppel. 998 F.3d at 869. In that case, a nurse and a staffing agency entered into a written travel-nurse-assignment contract, which, *inter alia*, set forth pay rates, explained that overtime payment would be dictated by "Hospital policy and/or State law" subject to the staffing agency's pre-approval, and contained an arbitration agreement. *Id.* The staffing agency assigned the nurse to work at a hospital (a nonsignatory to the arbitration agreement). *Id.* After several months of work, the nurse brought a class and collective action alleging

---

[9] The dissent insists that the Herreras "narrowly" claim that they are entitled to a refund from Cathay Pacific, and not ASAP. Dissent at 26. This position is mistaken because in matters of equity, it does not matter against whom the complaint was leveled. *See Franklin*, 998 F.3d at 875 ("[L]itigants and their lawyers cannot . . . plead around equitable estoppel.") As we already observed, the Herreras alleged that ASAP represented to them that refunds were not available from Cathay Pacific, implicating both ASAP and Cathay Pacific.

statutory claims against the hospital to recover unpaid wages. *Id.* at 870. The hospital moved to compel arbitration under the agreement between the nurse and the staffing agency. *Id.* In affirming the district court's order granting the motion, we found irrelevant that the nurse only brought claims against the hospital and we held that the nurse's employment with the staffing agency was "central" to her claims in part because the staffing agency was responsible for reviewing the nurse's timekeeping records, approaching the hospital with any discrepancies, and paying the nurse her wages and any overtime payment due. *Id.* at 875–76. Further, we explained that even if the nurse had an independent claim against the hospital, questions remained as to how and whether the nurse had been paid by the staffing agency under its contract containing the arbitration clause. *Id.* at 876. Because the nurse's claims against the hospital turned on the staffing agency's performance under its contract, we held that the nurse's claims against the hospital were "intimately founded in and intertwined with" her employment contract with the staffing agency and that the nurse was "equitably estopped from avoiding arbitration of her claims" against the hospital. *Id.*

Similar to *Franklin*, where the agreement between the nurse and the staffing agency set forth that the agency was responsible for paying overtime as dictated by hospital policy or state law, here, the Terms & Conditions provided that ASAP would process refunds consistent with Cathay Pacific's fare restrictions, subject to ASAP's processing fee. As in *Franklin*, it is of no moment that the Herreras did not direct their claim against ASAP when the FAC alleges facts that, in review of the full record, place ASAP's conduct with respect to the refund in question under its Terms & Conditions. *See id.* at 875 ("In matters of equity, such as the

application of equitable estoppel, it is the substance of the plaintiff's claim that counts, not the form of its pleading."). Thus, whether the Herreras can maintain their breach-of-contract claim against Cathay Pacific based on ASAP's offer of expiring travel vouchers turns on whether ASAP abided by its Terms & Conditions in its role as "middleman."[10]

Our dissenting colleague states that the Herreras' breach-of-contract claim under the GCC is not "intimately founded in and intertwined with" ASAP's Terms & Conditions because there are "simply two different obligations, set out in two different contracts, involving two different sets of parties." Dissent at 25. But the inquiry is not merely whether the two sets of parties have independent obligations. Rather, our focus must be on how the obligations interact as a whole. For instance, in *Franklin*, although the hospital had an independent statutory obligation to pay the nurse, we "look[ed] at whether the substance of [the nurse's] claims against the [h]ospital [was] so intertwined with her employment contract with [the staffing agency] that it would be unfair for [her] to avoid arbitration." 998 F.3d at 875. There, we concluded that the fact that the nurse's claims against the hospital implicated the staffing agency's responsibilities under its contract containing the arbitration clause and the fact that the necessary payment information was in the staffing agency's contract strongly favored applying equitable estoppel. *Id.* at 875–76. Similarly, here, the Herreras' claim implicates ASAP's responsibilities under its Terms & Conditions to properly process refund

---

[10] For that reason, we conclude that to the extent the breach-of-contract claim is based on ASAP's communications with the Herreras regarding the refund, the claim falls within the scope of the arbitration clause in the Terms & Conditions.

requests consistent with Cathay Pacific's restrictions.[11] Further, if the Herreras are able to sustain their claim against Cathay Pacific, they would be entitled to a refund. To determine the appropriate refund amount, we would need to know how much the Herreras paid ASAP for the tickets—a transaction governed by ASAP's Terms & Conditions. It is this interconnectedness that makes equitable estoppel appropriate here.

To be sure, several of the Herreras' allegations giving rise to the breach-of-contract claim do not implicate ASAP's conduct or its Terms & Conditions. For instance, in addition to the Herreras alleging that Cathay Pacific "deprived" them of their refund by offering coupons or vouchers, the Herreras allege that Cathay Pacific breached its GCC by *referring* them to ASAP to seek the refund. However, California law does not require that every allegation in the complaint be intertwined with the contract containing the arbitration clause for equitable estoppel to apply. *See Goldman*, 173 Cal. App. 4th at 230 (considering whether the allegations "are in *any way* founded in or bound up with the terms or obligations in the operating agreement" (emphasis added)). Moreover, the Herreras' allegation that ASAP's communication offering travel vouchers purportedly on

---

[11] We disagree with our dissenting colleague that to reach ASAP's conduct under its Terms & Conditions, we must first conclude that Cathay Pacific did not owe the Herreras a refund. Dissent at 26. Although, under the GCC, Cathay Pacific is entitled to issue a refund for a cancelled flight to either the passenger or to whoever paid for the ticket, on the record before us Cathay Pacific has not provided a refund to either the Herreras or ASAP. We make no determination as to the merits of the Herreras' breach-of-contract claim, only that it is necessary to resolve whether ASAP violated its obligations under its Terms & Conditions by misrepresenting Cathay Pacific's fare restrictions to determine whether Cathay Pacific breached its obligations under the GCC to issue a refund.

behalf of Cathay Pacific breached the GCC is not incidental to—but a central allegation of—the FAC.

"The 'linchpin' for equitable estoppel is fairness." *Kramer*, 705 F.3d at 1133, quoting *Goldman*, 173 Cal. App. 4th at 220.  The Herreras contend that it would be unfair to apply equitable estoppel against them because the refund process was not clear under ASAP's Terms and Conditions and Cathay Pacific's GCC, leaving the Herreras "holding the bag."  This position is without merit for several reasons.

First, the Herreras ignore Article 11 of the GCC, permitting Cathay Pacific to refund the third-party who purchased the Herreras' tickets; Cathay Pacific's email, directing the Herreras to contact ASAP to request the refund; and ASAP's Terms & Conditions, contemplating that ASAP would process refund requests consistent with Cathay Pacific's fare restrictions.  The Herreras were left "holding the bag" because ASAP denied their refund request, a denial that Cathay Pacific attests it did not direct ASAP to provide on Cathay Pacific's behalf.

Second, the Herreras misconstrue the fairness inquiry. The proper focus of the inquiry is not whether the refund process under the agreements was unclear, but whether the Herreras' conduct, or even ASAP's, renders it unfair for the Herreras to circumvent the arbitration clause in ASAP's Terms & Conditions.  With that framing in mind, the Herreras presumably received, as advertised, the benefit of purchasing discounted tickets from ASAP.  As part of the bargain, the Herreras agreed to ASAP's Terms & Conditions, in which ASAP explicitly stated that ASAP will charge a $250 fee to process any refund request if permitted by the airline.  Now, the Herreras take issue with Cathay Pacific directing them to deal with ASAP in the refund

process.  Such a request cannot be characterized as Cathay Pacific "pass[ing] the buck" to ASAP when the Herreras purchased the tickets from ASAP with an understanding that ASAP processed refunds to the extent allowed by the airline. Enforcing a valid arbitration provision against a signatory under these circumstances does not undermine notions of fairness.**[12]**

Having determined that the district court erred in denying Cathay Pacific's motion to compel arbitration, the action shall be stayed pending arbitration of the Herreras' breach-of-contract claim.  *See Smith v. Spizzirri*, 144 S. Ct. 1173, 1175 (2024).  "Section 3 of the FAA specifies that, when a dispute is subject to arbitration, the court 'shall on application of one of the parties stay the trial of the action until [the] arbitration' has concluded."  *Id.*, quoting 9 U.S.C. § 3.  In its motion to compel arbitration filed prior to the Supreme Court's decision in *Spizzirri*, Cathay Pacific requested that the court dismiss or, in the alternative, stay the action pending arbitration.  Since *Spizzirri* made clear that a district court does not have discretion to dismiss the action when granting a motion to compel arbitration under 9 U.S.C. § 3, the court is compelled to grant Cathay Pacific's alternative request for a stay.

---

[12] For similar reasons, the Herreras' argument that applying equitable estoppel in this case would "encourage" airlines to issue contracts that keep passengers "in the dark" regarding the refund process and "erect" barriers to obtain the refund is unpersuasive.  Moreover, we make no determination as to the merits of the Herreras' breach-of-contract claim against Cathay Pacific.  We narrowly hold that the Herreras' claim is "intimately founded in and intertwined with" ASAP's Terms & Conditions.

V.

For these reasons, we conclude that the district court erred in denying Cathay Pacific's motion to compel arbitration based on the doctrine of equitable estoppel. Accordingly, we reverse the district court's order and remand the case with instructions to stay the action pending arbitration of the Herreras' breach-of-contract claim.

**REVERSED AND REMANDED.**

FORREST, J., dissenting:

When parties agree to arbitrate contract disputes, they cannot skirt their agreement by suing a non-party to the contract for conduct that is governed by or bound up with the contract. This rule is an application of equitable estoppel. Passengers Winifredo and Macaria Herrera did not have an arbitration agreement with airline Cathay Pacific Airways Limited (Cathay Pacific); they had an arbitration agreement with the travel booking website where they bought their tickets—ASAP Tickets. In this case, the Herreras challenge Cathay Pacific's failure to give them a refund after cancelling their flight due to the COVID-19 pandemic. Because the Herreras' claim against Cathay Pacific—*as they presented it*—does not rely or depend on the terms of their ASAP Tickets contract, this is not a case where the Herreras are unfairly trying to avoid their agreement to arbitrate. Therefore, I would affirm the district court's denial of

Cathay Pacific's motion to compel arbitration, and I respectfully dissent.[1]

## I.   Equitable Estoppel

A litigant who is not party to an arbitration agreement can nonetheless enforce the agreement under the Federal Arbitration Act to the extent allowed under state law. *GE Energy Power Conversion Fr. SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1644 (2020). Under California law, equitable estoppel prevents a plaintiff from avoiding an arbitration agreement entered into with a third party where (1) the plaintiff's claims asserted against a nonparty to the arbitration agreement are "intimately founded in and intertwined with" a contract that includes the arbitration agreement, or (2) where the plaintiff "alleges substantially interdependent and concerted misconduct" by the defendant and the third party that is "founded in or intimately connected with the obligations of the underlying agreement [that contains the arbitration agreement]."

---

[1] I agree with the majority that 14 C.F.R. § 253.10 does not prevent Cathay Pacific's motion to compel arbitration, but for a different reason. During the rulemaking process for this regulation, the Department of Transportation stated that it applies only to domestic flights. *See* Enhancing Airline Passenger Protections, 76 Fed. Reg. 23110, 23155 (April 25, 2011) (to be codified at 14 C.F.R. pts. 244, 250, 253, 259, 399) ("As a point of clarification, the forum for consumer claims related to travel on international flights to or from the United States is governed by the Montreal Convention or Warsaw Convention, depending on the type of flight and its origination/destination."). Giving the agency's interpretation of its own regulation appropriate deference, I conclude that the regulation does not apply to the Herreras' international flight. *See Decker v. Nw. Envt'l. Def. Ctr.*, 568 U.S. 597, 613 (2013) ("When an agency interprets its own regulation, the Court, as a general rule, defers to it unless that interpretation is plainly erroneous or inconsistent with the regulation." (quotations and citations omitted)).

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1128–29 (9th Cir. 2013) (citation omitted).**[2]**

The first circumstance (intertwined-with-contract claims) applies when the claim asserted "must rely on the terms of the [contract containing the arbitration agreement]." *Id.* at 1129. "[M]ere reference to a term of the [contract containing the arbitration agreement] is not enough." *Id.* at 1132. It also does not apply where the plaintiff "would have a *claim* independent of the existence of the [contract containing the arbitration agreement]." *Id.* at 1131.

For instance, in *Kramer*, the court concluded that consumers' product-defect claims against a manufacturer were not intertwined with their retail purchase agreements. *Id.* at 1131–32. Even though the claims depended on the consumers having purchased the product, in many cases their claims did not rely on the actual terms of the purchase agreement. *Id*. By contrast, in *Franklin v. Community Regional Medical Center*, a nurse brought claims for wages and overtime pay for unrecorded time against the hospital where she worked on assignment from a staffing agency. 998 F.3d 867, 875–76 (9th Cir. 2021). We concluded that resolving her claim required "information about how and whether [she] was paid by [the staffing agency]." *Id.* As a result, her claims were "intertwined with the employment relationship with the staffing agency" which "set her hourly wage rate and overtime rate . . . the regular length of her

---

[2] The majority holds that an order denying a nonsignatory's motion to compel arbitration based on the doctrine of equitable estoppel is reviewed de novo, but it offers little support for that conclusion. I would not address whether de novo or abuse of discretion review applies because I would affirm the district court under either standard.

shifts, the time her shifts started and ended, and the number of hours in her workweek." *Id.*

The second circumstance (concerted-misconduct claims) applies when the claim alleges that a signatory and nonsignatory to the contract containing the arbitration agreement engaged in "substantially interdependent and concerted misconduct." *Id.* at 1132. Such misconduct, "standing alone [is] not enough." *Id.* (quoting *Goldman*, 173 Cal. App. 4th at 219). Rather, the misconduct "must be founded in or intimately connected with the obligations of the underlying agreement [containing the arbitration provision]." *Id.* (quoting *Goldman*, 173 Cal. App. 4th at 219). Consistent with the party-presentation principle, how the plaintiff frames her case governs the equitable estoppel analysis. *See Franklin,* 998 F.3d at 875 ("[I]t is the substance of the plaintiff's claims that counts, not the form of its pleadings"); *Kramer*, 705 F.3d at 1129–32 (focusing on how plaintiffs pleaded their claims).

## II.  The Herreras' Claims

The Herreras advanced a simple theory: Cathay Pacific breached its ticket contract with them by not issuing them a refund after cancelling their flight. The contract alleged between these parties is the terms of the ticket issued by Cathay Pacific, governed by Cathay Pacific's General Conditions of Carriage. The facts alleged in the complaint discuss ASAP Tickets' actions following the flight cancelation, but for the purpose of describing Cathay Pacific's breach. The Herreras allege that Cathay Pacific did not deny their refund request outright, but referred them to ASAP Tickets, which offered only an expiring travel voucher on Cathay Pacific's behalf. They also assert Cathay Pacific deprived them "of the refunds to which they are

contractually entitled . . . *by preventing customers who purchased a ticket through a third-party booking site from requesting a refund directly from Cathay* . . . . [and] directing all refund requests to those third-party agents instead." (Emphasis added) Thus, as the Herreras see their case, Cathay Pacific breached its contractual obligations by "erect[ing] numerous . . . bureaucratic barriers" that prevented the Herreras from obtaining the refund to which they were entitled.

Cathay Pacific argues that this case must be arbitrated because the Herreras' refund claim is intertwined with their purchase contract with ASAP Tickets. Specifically, Cathay Pacific contends that it was contractually obligated to pay any refund owed to the Herreras to ASAP Tickets, which would then pass on the refund to the Herreras, subject to the terms of its purchase contract. Indeed, Cathay Pacific's counsel expressly stated at oral argument that ASAP Tickets was a necessary middleman for processing the refund.

To support its position, Cathay Pacific relies on the refund provision in its General Conditions of Carriage, which provides in relevant part: "Except as otherwise provided by the Warsaw Convention or the Montreal Convention or applicable law, if we cancel a flight . . . we shall . . . make a refund in accordance with the provisions of Article 11." Article 11.1 then provides that the refund will be made "either to the person named in the Ticket, or to the person who has paid for the Ticket upon presentation of satisfactory proof of such payment. . . . *If a Ticket has been paid for by a person other than the Passenger named in the Ticket, and the Ticket indicates that there is a restriction on refund, we shall make a refund only to the person who paid for the Ticket*, or to that person's order." (Emphasis added).

Cathay Pacific's assertion here—that Article 11.1 mandates that it pay to ASAP Tickets any refund owed (such that the Herreras' receipt of any refund was governed by ASAP Tickets' terms and conditions)—falls short because it depends on unestablished facts. The provision in Article 11.1 on which Cathay Pacific relies applies only where the ticket terms include a "restriction on refund." The record is silent as to what, if any, restrictions were indicated on the Herreras' tickets. Likewise, the record does not establish "who has paid for the Ticket." There is general support, as well as intuitive appeal, for the conclusion that ASAP Tickets purchased the tickets directly in a batch, but Cathay Pacific did not present its agreement with ASAP Tickets or otherwise present evidence on this point. With these predicate facts unproven, Cathay Pacific has not shown that ASAP Tickets' contract terms with Herrera govern their claim.

But more important, the asserted claim that Cathay Pacific failed to perform its obligations regarding issuing refunds is not "intimately founded in and intertwined with" the Herreras' contract with ASAP Tickets. *Kramer*, 705 F.3d at 1128. Say Cathay Pacific *was* required to issue any refund owed to ASAP Tickets instead of to the Herreras directly. Even then, Cathay Pacific's obligation to ASAP Tickets would be independent from any downstream obligation that ASAP Tickets owed the Herreras. *Id.* at 1131. There are simply two different obligations, set out in two different contracts, involving two different sets of parties.

The majority says the two obligations are intertwined because Cathay Pacific asserts "that ASAP violated its own Terms & Conditions by creating refund restrictions— restrictions that form a basis for the Herreras' claim." Maj. Op. at 14. I disagree. In analyzing intertwined-with-contract

claims, the question is not what defendants assert, but what plaintiffs plead in their complaint. *Franklin,* 998 F.3d at 875. And here the Herreras narrowly claim that they were entitled to a refund *from Cathay Pacific*.

A factfinder could not reach the outcome the majority relies on—that Cathay Pacific's refund obligation ran to ASAP Tickets, but ASAP Tickets violated its own Terms & Conditions by denying the Herreras a refund—without first concluding that Cathay Pacific did not owe the Herreras a refund. A court would have to adjudicate the merits of the asserted claim to even reach the issue of ASAP Tickets's obligations to the Herreras. In this regard, the Herreras' case differs from *Franklin,* where we concluded that the plaintiff's unpaid-work claims were inextricably intertwined with the third-party contract because the merits of her claims could not be resolved without information about her pay rate and terms of employment set out in the third-party contract. 998 F.3d at 875. In contrast, here, a factfinder can resolve the Herreras' claim that Cathay Pacific owes them a refund without any information about their relationship to ASAP Tickets.

Nor has Cathay Pacific shown that the other basis for equitable estoppel applies. No interdependent misconduct "inextricably bound up with the obligations imposed by the agreement containing the arbitration clause"—such as ASAP Tickets offering only vouchers on Cathay Pacific's behalf—is alleged. *Kramer*, 705 F.3d at 1133 (quoting *Goldman v. KPMG LLP*, 173 Cal. App. 4th 209, 219 (2009). Rather, as in *Kramer*, the "allegations alone cannot trigger equitable estoppel under California contract law" because they specifically concern Cathay Pacific's—and not ASAP's—obligation to provide a refund under the terms of the contract with the Herreras. *Id.*

I respectfully dissent.